**KENTUCKY INSURANCE GUARANTY ASSOCIATION, Appellant,**

v.

**NATURAL RESOURCES and ENVIRONMENTAL PROTECTION CABINET, Appellee.**

No. 93-CA-000548-MR.

Court of Appeals of Kentucky.

March 25, 1994.

Case Ordered Published by Court of Appeals May 20, 1994.

Discretionary Review Denied by Supreme Court Nov. 16, 1994.

J.W. Smirz, Timothy D. Martin, Landrum & Shouse, Lexington, for appellant.

Alice C. Kinkead, Karen Harpenau Rippy, Frankfort, for appellee.

Before LESTER, C.J., and DYCHE and EMBERTON, JJ.

LESTER, Chief Judge.

This is an appeal from a judgment supported by an opinion declaring that a cited violation by appellee for failure to maintain a performance bond by a mining permittee is a covered claim within the meaning of the Kentucky Insurance Guaranty Association Act, KRS 304.36–090 *et. seq.*

Appellant seeks to avoid its statutory obligation as well as thwart the purposes for which it was legislatively created upon a hyper-technical interpretation of the term "covered claim." Because we believe the well-reasoned opinion of the circuit court correctly resolves the issue, we adopt it as our own:

This matter is before the Court upon Kentucky Insurance Guaranty Association's petition for declaratory relief. The controversy between the Petitioner, Kentucky Insurance Guaranty Association ("KIGA") and the Respondent, Commonwealth of Kentucky, Natural Resources and Environmental Protection Cabinet ("NREPC") involves the NREPC's determination that it could forfeit certain reclamation performance bonds for "failure to maintain a bond" pursuant to KRS 350.010 et. seq. and hold KIGA liable for the forfeiture amount pursuant to KRS 304.36–010 et seq. KIGA seeks a binding declaration it is not liable for such bonds.

Kentucky requires that surface mining permittees acquire and maintain reclamation performance bonds ("bond") to insure compliance with applicable statutes and regulations. Allied Fidelity Insurance Company, American Druggists Insurance Company, Integrity Insurance Company, American Fidelity Fire Insurance Company, and Union Indemnity Insurance Company ("the sureties") issued numerous performance bonds to various surface mining permit holders. At various times in 1985, 1986 and 1987, courts of competent jurisdiction determined that each of these sureties was insolvent by separate Orders of Liquidation.

Upon learning of a surety's insolvency, NREPC issued notices of non-compliance to the permittees holding bonds issued by the insolvent surety. NREPC argues that it may forfeit the bonds of those permittees who have failed to obtain new bonds from solvent sureties because they failed to maintain an adequate bond.

The Kentucky Insurance Guaranty Association Act, KRS 304.36–010, et. seq., establishes KIGA and sets forth KIGA's rights, duties, and obligations. The purpose of the Act involves "providing a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policy holders because of the insolvency of an insurer." KRS 304.36–020. Pursuant to KRS 304.36–080, KIGA became liable for unpaid "covered claims" of the insolvent sureties arising prior to the insolvency determination or within thirty days thereafter.

NREPC maintains that KRS 304–36.080 makes KIGA liable for bonds forfeited because of a permittee's failure to maintain an adequate bond. KIGA argues that KRS 350.010 et. seq. and applicable regulations do not permit forfeiture of performance bonds for failure to maintain an adequate bond, when such a failure arises from the surety's insolvency. Additionally, KIGA contends that KRS 304–36.080 does not impose an obligation on KIGA to pay these claims.

KRS 350.060(14) and 350.064(1) require that holders of surface mining permits obtain and maintain performance bonds to insure proper reclamation of the mining site. Insolvency of the surety issuing the performance bond places the permittee in violation of KRS 350.064(1) and various regulations. 405 KAR 10:030. Upon notice of the insolvency, KRS 350.130 and 405 KAR 10:030 require that NREPC issue notices of non-compliance to all permittees holding performance bonds issued by the insolvent surety. If the permittee does not abate the violation within ninety days of receiving the notice of non-compliance, NREPC may revoke the permit and forfeit the performance bond. KRS 350.130.

KIGA argues that a performance bond may not be forfeited for failure to maintain an adequate bond because 405 KAR 10:050, which sets forth "criteria for forfeiture", does not specifically make an inadequate bond a ground for forfeiture. However, 405 KAR 10:050(1)(b) makes failure to conduct operations in accordance with KRS Chapter 350 and the conditions of the permit grounds for forfeiture. KRS 350.064 requires that a permittee possess an adequate performance bond. Failure of the permittee to hold an adequate bond places the permittee in violation of KRS Chapter 350 and its surface mining permit. Therefore, 401 KAR 10:050 permits bond forfeiture for failure to maintain an adequate bond.

The performance bond binds the surety "as a guarantee that the provisions of the permit, all applicable laws, rules, regulations and the terms of the bond will be observed." Insolvency of the surety places the permittee in violation of applicable laws and regulations, therefore, if the permittee does not abate the violation of applicable laws and regulations, within ninety days of receiving the notice of non-compliance, the surety would become liable for the bond amount.

Because the sureties are insolvent, the question becomes whether KIGA is liable for these bond amounts. KRS 304–36.080(1)(a) makes KIGA liable for "covered claims existing prior to the determination of insolvency." KRS 304.36–050(3) defines a covered claim as "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this subtitle applies."

The performance bond makes the surety issuing the bond liable for the bond amount if the permittee fails to comply with all applicable laws, rules and regulations. The permittee's failure to maintain a bond is within the coverage of the surety's guarantee, thus it is a "covered claim" within the meaning of KRS 304.36–050(3). *Kentucky Insurance Guaranty Association v. Natural Resources and Environmental Protection Cabinet,* Ky., 781 S.W.2d 519 (1989). In *Kentucky Insurance Guaranty Association* the Supreme Court found that KRS 304.36–080 creates liability for claims based on violations which occur before the insolvency declaration or within thirty days thereafter. Thus, the claims based on failure to maintain an adequate bond "arise" upon the declaration of insolvency, and therefore fall within the obligation of KIGA pursuant to KRS 304.36–080(1)(a).

KIGA maintains that KRS 304.36–080(1)(b) relieves it of any liability for claims based on "failure to maintain a bond." KRS 304.36–080 states:

(1) The association shall:

(a) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within thirty (30) days after the determination of insolvency ...

(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.

KIGA argues that since no violations would have occurred in the absence of the sureties' insolvency, KRS 304.36–080(1)(b) relieves it of any liability premised on the insurers insolvency. Thus, KIGA maintains, it is not liable for bonds forfeited for "failure to maintain a bond."

█ Pursuant to KIGA's theory, KRS 304.36–080(1)(b) relieves KIGA of liability apparently created by KRS 304.36–080(1)(a). Where there is an apparent conflict between statutes or sections thereof, this Court must endeavor to harmonize its interpretation so as to give effect to both. *Ledford v. Faulkner,* Ky., 661 S.W.2d 475 (1983). The interpretation best giving effect to both sections (a) and (b) is that section (a) establishes the obligations of KIGA, while section (b) defines the extent of those obligations.

In the context of the present controversy, section (a) establishes the liability of KIGA for bonds forfeited for failure to maintain an adequate bond, while section (b) defines the extent of that liability.

KRS 304.36–080(1)(b) makes KIGA liable only to the extent that the insolvent insurer would have been liable. The insolvent insurer would have been liable for the bond amounts, only if the permittee failed to comply with other aspects of applicable statutes and regulations. Therefore, pursuant to KRS 304.36–080(1)(a) KIGA becomes liable for performance bond where the permittee fails to obtain an adequate bond after the insolvency. However, 304.36–080(1)(b) limits KIGA's obligation to those instances where the permittee violates applicable statutes and regulations other than the performance bond requirements. In most cases, KIGA will only become liable if a permittee fails to obtain a new performance bond and fails to properly reclaim the mining site. This interpretation best carries out the intent of the statutes creating the KIGA and the statutes requiring performance bonds to insure proper reclamation.

Therefore, this Court hereby makes the following binding declaration. "Failure to maintain a bond" is a violation of KRS Chapter 350 and 405 KAR Chapter 10 requiring forfeiture if the violation is not abated. Such forfeiture claims are "covered claims" arising within 30 days of the declaration of insolvency regardless of when subsequent violations occur. Kentucky Insurance Guaranty Association is liable to the Natural Resources and Environmental Protection Cabinet for such performance bond when and if the permittee violates applicable statutes and regulations other than those involving performance bond requirements.

The judgment is affirmed.

All Concur.