COMMONWEALTH of Kentucky, NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET; Phillip J. Shepherd, Secretary Appellants,

v.

KENTUCKY INSURANCE GUARANTY ASSOCIATION, Appellee.

No. 95–CA–0746–MR.

Court of Appeals of Kentucky.

May 30, 1997.

Rehearing Denied Aug. 8, 1997.

Discretionary Review Denied by Supreme Court April 8, 1998.

Mark A. Posnansky, Mary A. Stephens, Frankfort, for appellants.

John S. Talbott, III, Philip E. Wilson, Lexington, for appellee.

Before WILHOIT, C.J., and ABRAMSON and EMBERTON, JJ.

*OPINION*

ABRAMSON, Judge.

This appeal raises several novel issues regarding the application of the seven-year limitations provision contained in KRS 413.220(3) to claims against the Kentucky Insurance Guaranty Association ("KIGA") arising from the insolvencies of sureties which had issued surface mining performance bonds. In a declaratory judgment proceeding, the Franklin Circuit Court determined that the statute barred several claims which the Natural Resources and Environmental Protection Cabinet ("Cabinet") had against KIGA because the Cabinet failed to initiate administrative proceedings within the

seven-year period following issuance of notices of noncompliance to the permittees. In this appeal, the Cabinet asserts that the judgment is erroneous in the following respects: 1) KRS 413.220(3) does not apply to administrative actions; 2) a cause of action for forfeiture on the bonds in question has not yet accrued; 3) the limitations period has not commenced to run because the violations giving rise to forfeiture are unabated and continuing; and 4) the Cabinet's rights against KIGA have been fully preserved by the filing of proofs of claim with the liquidators for the insolvent sureties. Finding no reversible error with respect to any of these issues, we affirm the judgment of the Franklin Circuit Court.

The facts are not in dispute. The Commonwealth of Kentucky, through KRS Chapter 350, requires surface mining permittees to acquire and maintain reclamation performance bonds to insure compliance with statutes and regulations regarding restoration of surface mining sites. A performance bond may be a surety bond, a collateral bond, a combination of surety and collateral bonds or a bond filed pursuant to the Kentucky Bond Pool Program. 405 KAR 10:030, Section 1. Where a surety bond is involved, insolvency of the surety which issued the bond places the permittee in violation of the reclamation bond statute, KRS 350.064(1), as well as various regulations. The Cabinet, upon notice of a surety's insolvency, issues notices of noncompliance to all permittees holding performance bonds issued by the insolvent entity. 405 KAR 10:030. KRS 350.130 requires permittees to abate any violation within ninety days of receipt of the notice of noncompliance or face revocation of the mining permit and forfeiture of the performance bond.

The legislature created KIGA, a non-profit legal entity set up under KRS 304.36–010 *et seq.*, as a mechanism to cover claims arising prior to and within thirty days after a determination of insolvency of an insurer. KIGA is composed of all insurers transacting business in Kentucky who write certain types of direct insurance, including sureties who issue performance bonds. KRS 304.36–060. Pursuant to KRS 304.36–080(1)(b), KIGA is lia-

ble only to the extent that the insolvent insurer would have been liable.

A dispute arose concerning KIGA's liability on numerous performance bonds issued to the Cabinet. With respect to the first group of bonds, the Cabinet failed to issue orders of noncompliance within thirty days of the determination of the respective sureties' insolvencies. A hearing officer for the Cabinet concluded that these claims were not "covered claims" within the meaning of KRS 304.36–050(3) and KRS 304.36–080(1) because they were not made within the thirty-day window provided by statute. As to the second group of bonds, the Cabinet issued notices of noncompliance within the required thirty-day period but failed to initiate administrative proceedings for bond forfeiture within seven years of the issuance of the notice of noncompliance. The hearing officer concluded that KRS 413.220(3), a seven-year limitations statute for suits against a surety, barred the Cabinet's claims on this ·second group of surety bonds.

The hearing officer's recommendations were subsequently considered by the Secretary of the Cabinet who granted KIGA's motion for summary judgment, citing as dispositive the hearing officer's finding that the claims in question were not "covered claims." In an order clarifying his decision, the Secretary stated that because the recommendations ·concerning the statute of limitations were not necessary to the hearing officer's decision that portion of the recommendation was denied as moot. KIGA then petitioned the Franklin Circuit Court for a declaration that the Cabinet is barred from pursuing any claims it might have had with respect to the second group of bonds upon which the Cabinet had issued timely notices of noncompliance but failed to initiate any proceedings against KIGA during the seven years following issuance of the notices. Rejecting the arguments now advanced in this forum, the circuit court found that KRS 413.220(3) applied to bar the claims in question. Although our analysis differs from the trial court's, we agree and affirm.

I. *KRS 413.220(3) APPLIES BY ANALOGY TO BAR ADMINISTRATIVE AC-*

*TIONS BROUGHT BEYOND THE SEVEN-YEAR LIMITATION PERIOD*

■ The starting point for our discussion is necessarily the language of the limitations statute in question, KRS 413.220(3):

A surety in any obligation or contract, other than those provided for in KRS 413.230, shall be discharged from all liability on it unless suit is brought on it within seven (7) years after the cause of action accrues.

The cross-referenced statute, KRS 413.230, provides a five-year limitations period in favor of sureties for specifically named persons handling funds from a decedent's estate; that statute obviously has no relevance to the instant case. To avoid the otherwise all-encompassing language of the statute, the Cabinet first argues that KRS 413.220(3) addresses judicial actions and has no application in the context of administrative proceedings. Although initially appealing, on closer examination the Cabinet's position is not justified.

Relying upon the following language in *Metts v. City of Frankfort,* Ky.App., 665 S.W.2d 318, 319 (1984), the Cabinet insists that the limitations statutes in KRS Chapter 413 generally are operative only within the sphere of judicial actions:

KRS 413.250 provides that an action "shall be deemed to commence on the date of the first summons or process issued in good faith from a court having jurisdiction of the cause of action." CR 3 states that a civil action "is commenced by the filing of a complaint with the court and the issuance of a summons or warning order thereon in good faith." *Accordingly, the "action" contemplated by the statutes of limitations involves judicial proceedings.* (emphasis added).

In *Metts,* the Secretary of Transportation sought to recover from the City of Frankfort an indebtedness attributable to the relocation of city sewer lines in the course of certain highway construction projects undertaken by the Department of Transportation. The city had accepted responsibility for the relocation work but had never reimbursed the Department. To recover the unpaid sums the Secretary first served notice on state officials pursuant to KRS 44.030 that the unpaid bills should be set off against certain legislative appropriations to the city. KRS 44.030 recognizes the right of the state to offset any debt owed to the state against any payment due to "any person on a claim against the state in his own right, or as an assignee of another. . . ." When the city later brought suit to enjoin the setoff, the circuit court and appellate court held that the five-year statute of limitations had run before the Secretary's counterclaim seeking reimbursement was filed. This court concluded that the earlier notice of setoff pursuant to KRS 44.030 was not sufficient to toll the applicable statute of limitations. In this context, the court made the aforequoted statement regarding the applicability of the statutes of limitation to judicial proceedings. More specifically, the *Metts* court held that "the proper use of KRS 44.030 is not an action to which the statute of limitations apply." 665 S.W.2d at 319.

The summary setoff provision at issue in *Metts* is easily distinguishable from the administrative proceedings available to the Cabinet in this case. The Cabinet's hearing officers have quasi-judicial powers; they make findings of fact which are binding on appeal to the circuit and appellate courts unless not supported by substantial evidence. They are granted authority by statute to impose fines, revoke permits and order the forfeiture of performance bonds. Clearly the *Metts* case did not require the court to consider the applicability of statutes of limitations to administrative proceedings such as these quasi-judicial proceedings available to the Cabinet. The Cabinet's attempts to characterize the holding in *Metts* as controlling simply do not survive a reading of that case.

Similarly unpersuasive is the Cabinet's citation to *Vessels v. Brown–Forman Distillers Corporation,* Ky., 793 S.W.2d 795 (1990), a case which addressed whether a worker's compensation claimant could appeal a Court of Appeals decision to the Supreme Court as a matter of right or must seek discretionary review. In that case the Court stated "[n]othing in Section 109 [of the Kentucky Constitution] contemplates an administrative

agency, much less the Workers' Compensation Board, as the equivalent of a court." 783 S.W.2d at 798. This statement was made in the course of the Supreme Court's holding that the guarantee in Section 115 of the Kentucky Constitution of "at least one appeal to another court" required the conclusion that a workers's compensation claimant could appeal to the Supreme Court as a matter of right. As the *Vessels* court reasoned, under the workers' compensation statute the Court of Appeals is the first court contemplated by Section 115 and the Supreme Court is "another court" which must necessarily hear the appeal as a matter of right.

Again the Cabinet attributes too much to an isolated statement in a dissimilar case. Determining which tribunals constitute courts for purposes of assuring that litigants in Kentucky receive their constitutional right to at least one appeal to "another court" is a different inquiry from determining whether a statute of limitations applicable in judicial proceedings is also applicable in administrative proceedings. For this determination we must examine the limitations provisions of KRS Chapter 413 and case law addressing administrative hearing procedures where no time limitations are provided.

KRS 413.250 provides that "[a]n action shall be deemed to commence on date of the first summons or process issued in good faith from the court having jurisdiction of the cause of action." While "court" may be generally understood to be limited to tribunals of the judicial branch of government, one provision of KRS Chapter 413 expressly rejects that circumscribed meaning. KRS 413.270 provides:

(1) If an action is commenced in due time and in good faith in any court of this state and the defendants or any of them make defense, and it is adjudged that the court had no jurisdiction of the action, the plaintiff or his representative may, within ninety (90) days from the time of that judgment, commence a new action in the proper court. The time between the commencement of the first and last action shall not be counted in applying any statute of limitation.

(2) As used in this section, "court" means all courts, commissions, and boards which are judicial or *quasi-judicial tribunals authorized by the Constitution or statutes of the Commonwealth of Kentucky* or of the United States of America. (emphasis added).

We are mindful that the expanded definition of "court" set out in subsection (2) of the statute specifically references "this section," *i.e.,* KRS 413.270. We are also cognizant of the fact that there is nothing else in KRS Chapter 413 which sheds any light on the breadth of the term "court" as used elsewhere in the chapter. The circuit court concluded that KRS 413.220(3), .250 and .270(2) must be read together as effecting an overall policy concerning limitation provisions and that the broad definition of "court" in KRS 413.270 is also applicable to KRS 413.220(3). We are unwilling to take this first very significant step of extending the reach of potentially all statutes of limitation to any body fitting within the expanded definition of "court" in KRS 413.270. However, there are other compelling grounds for concluding that although KRS 413.220(3) is not literally applicable it should and must be applied by analogy.

■ Statutes of limitation in general are designed to bar stale claims arising out of transactions or occurrences which took place in the distant past. *Armstrong v. Logsdon,* Ky., 469 S.W.2d 342 (1971). They close the doors of the courts and are expressly intended "to be used as a blanket to smother the moribund claims" of plaintiffs and defendants. *Liter v. Hoagland,* 305 Ky. 329, 204 S.W.2d 219, 220 (1947). The legislative preference for prompt resolution of claims which underlies all statutes of limitation is equally compelling whether the forum is a court or a quasi-judicial tribunal. As the circuit court stated in this case: "It would be an absurd result if, for example, the Cabinet could commence a proceeding before a hearing officer of the Cabinet on a cause of action which arose ten years earlier, even though the action would be barred by the statute of limitations in every other tribunal of the Commonwealth."

Avoidance of the absurd result which concerned the circuit court does not require expanding the definition of "court." Courts in numerous jurisdictions, including Kentucky, when confronted with administrative boards conducting quasi-judicial proceedings but operating without any express limitations period in the enabling statute have applied by analogy the statute of limitation applicable to the common law predecessor to, or counterpart of, the administrative action. Thus in *Scott Tobacco Co. v. Cooper*, 258 Ky. 795, 81 S.W.2d 588, 590 (1934), the court concluded that actions before the former Workmen's Compensation Board must be brought within one year, the "limitation statute with reference to court actions for the recovery of negligently inflicted injuries." The court noted that the majority of courts addressing then-emerging workers compensation statutes which contained administrative hearing procedures were requiring actions before their respective boards or administrative bodies to be commenced within that period provided in the most analogous statute of limitation. *Id.* citing *Federal Rubber Co. v. Industrial Comm.*, 185 Wis. 299, 201 N.W. 261 (1924). The analysis provided by the *Federal Rubber* court seems equally apropos to the statutory proceeding in issue here:

> While we concur in saying that the enforcement of a claim under the Compensation Act is not the prosecution of an action as defined by statute, we nevertheless reach the conclusion that the limitation statutes apply to it. There can be no question that before the enactment of the Compensation Act a cause of action founded upon personal injury was barred in six years. What the Legislature did was to take away this cause of action and substitute for it claim and proceeding under the Compensation Act, making no change, as to this claim, when it should be barred.
>
> . . . .
>
> When we consider the fact that the Workmen's Compensation Act was enacted to secure a certain, speedy, and inexpensive method of adjusting such claims, and that the two limitations therein contained shorten the period from six to one and two years, respectively, we cannot believe that it was the legislative intent that claims not falling within those limitations should never be barred. The claim filed with the Commission and its enforcement is the substitute for the common-law action, and, being such, it is subject to the same period of limitations in the absence of a contrary legislative provision.

201 N.W. at 262.

As in *Scott Tobacco* and *Federal Rubber*, the administrative action at issue here, a bond forfeiture proceeding before a hearing officer of the Cabinet, has no express statutory limitations period. However, a reclamation bond forfeiture proceeding is simply an administrative counterpart to a common law contract action against a surety, a proceeding plainly addressed by KRS 413.220(3). Although not literally applicable, the seven-year period in KRS 413.220(3) applies by analogy.

In the final analysis perhaps the most persuasive evidence of the invalidity of the Cabinet's attempts to limit the reach of KRS 413.220(3) to judicial proceedings is the practical application of that position. As the Cabinet acknowledges there are two routes for ultimately obtaining forfeiture of a performance bond, both of which conclude with resort to the courts. The Cabinet summarizes these routes to bond forfeiture as follows:

> The Cabinet has two separate routes to bond forfeiture where there exist outstanding violations on a surface mining permit, or where criteria for bond forfeiture otherwise exist. Under the first scenario, the Cabinet sends written notification to the permittee and to the surety of the Cabinet's determination to initiate forfeiture, and advises the permittee and surety of their right to challenge such determination, if applicable. 405 KAR 10:050, Section 2. If neither the permittee nor surety request a hearing on the Cabinet's determination and the bond proceeds are not received by the Cabinet, the Secretary then enters a final order of forfeiture "and the Cabinet shall proceed in an *action* for collection on the bond." 405 KAR 10:050,

Section 2(1)(a), (b) and (c). (emphasis added.) Alternatively, the Cabinet may initiate formal hearing procedures to forfeit a bond, pursuant to 405 KAR 7:092, Section 5, by filing a complaint with the Cabinet's Office of Administrative Hearings. Following a hearing (or in the case of default, an order to show cause), the hearing officer issues a report and recommended order to the Secretary. 405 KAR 7:091, Section 3(5); 405 KAR 7:092, Section 3(5). Following entry and service of the final order of the Secretary, the permittee or surety has thirty (30) days in which to appeal such order. KRS 350.0305. Only after the thirty (30) day period for appeal has run, without the permittee or surety remitting the bond proceeds to the Cabinet, may the Cabinet seek enforcement of its order, and only by commencement of an action in Franklin Circuit Court. KRS 350.990(3).(sic)

Although the Cabinet cites KRS 350.990(3), the actual statute for judicial review following a hearing on bond forfeiture is KRS 350.032 which provides for review in Franklin Circuit Court or the circuit court of the county where the mine is located. Following the "commencement of the proceedings" in court pursuant to KRS 350.032, the circuit court can affirm, modify, enforce or set aside the order.

■ Thus if the Cabinet's interpretation is adopted, the administrative actions could proceed because they are not literally barred by the statute of limitations but to obtain recovery the Cabinet would eventually have to file an action in court at the conclusion of those administrative proceedings. Certainly KRS 413.220(3) would bar an action for collection on the bond as anticipated by 405 KAR 10:050. Even if the Cabinet commenced a proceeding in circuit court in accordance with KRS 350.032 following conclusion of the administrative process, KRS 413.220(3) and the foregoing discussion regarding an administrative agency's application of the most analogous limitations period should still bar the suit. A court would not be bound to affirm an administrative ruling ordering bond forfeiture where the statute of limitations was raised before the hearing officer and the period provided in the analogous

statute of limitations had in fact passed before the administrative proceeding was ever commenced. If the bond forfeiture process cannot be concluded in accordance with the statute and regulations, we perceive no logic whatsoever in allowing it to be commenced. In conclusion, the seven-year limitations period in KRS 413.220(3) applies by analogy. Because any administrative action for bond forfeiture at this juncture would be more than seven years beyond the issuance of the notices of noncompliance, the Cabinet's claims against KIGA are time-barred.

## II. A CAUSE OF ACTION AGAINST KIGA ACCRUES WHEN SUBSTANTIVE RECLAMATION VIOLATIONS OCCUR WHICH WOULD HAVE RENDERED THE INSOLVENT SURETY LIABLE

■ The Cabinet next argues that KRS 413.220(3) begins to run only when a "cause of action accrues," an event which it claims has not yet occurred. Under the Cabinet's theory the cause of action which it has against KIGA on the various bonds does not accrue until administrative proceedings are concluded and the Secretary of the Cabinet enters an order forfeiting the respective bonds. In a different fashion, the Cabinet is rearguing the applicability of KRS 413.220(3) to administrative proceedings. As KIGA notes, the real issue is not when a judicial remedy is first available but "what is the event which grants the Cabinet a cause of action to seek bond forfeiture and have a claim against KIGA." Stated differently, a cause of action accrues when the Cabinet first has the right to institute an action of any kind, administrative or judicial, against KIGA. That point in time has been precisely identified in an earlier decision of this court.

In *Kentucky Insurance Guaranty Association v. Natural Resources and Environmental Protection Cabinet*, Ky.App., 885 S.W.2d 315 (1994) [hereafter *KIGA II*], this court considered KIGA's contention that applicable statutes and regulations did not permit the forfeiture of a performance bond solely for failure to maintain an adequate bond where the failure arises from the insurer's insolvency. In rejecting this argument, the court focused on KIGA's obligations pursuant to

KRS 304.36–080 and identified when KIGA first becomes liable and, conversely, the Cabinet first has a cause of action:

> KRS 304.36–080(1)(b) makes KIGA liable only to the extent that the insolvent insurer would have been liable. The insolvent insurer would have been liable for the bond amounts, only if the permittee failed to comply with other aspects of applicable statutes and regulations. Therefore, pursuant to KRS 304.36–080(1)(a) KIGA becomes liable for performance bond where the permittee fails to obtain an adequate bond after the insolvency. However, 304.36–080(1)(b) limits KIGA's obligation to those instances where the permittee violates applicable statutes and regulations other than the performance bond requirements. In most cases, KIGA will only become liable if a permittee fails to obtain a new performance bond and fails to properly reclaim the mining site. This interpretation best carries out the intent of the statutes creating the KIGA and the statutes requiring performance bonds to insure proper reclamation.

885 S.W.2d at 318.

The court's holding was underscored in the closing lines of the opinion when it stated "[KIGA] is liable to the [Cabinet] for such performance bond *when and if* the permittee violates applicable statutes and regulations other than those involving performance bond requirements." *Id.*, (emphasis supplied). This holding is a natural extension of the Kentucky Supreme Court opinion in *Kentucky Insurance Guaranty Association v. Natural Resources and Environmental Protection Cabinet,* Ky., 781 S.W.2d 519, 521 (1989) [hereafter *KIGA I* ], wherein the court held that "a liberal construction of this act [creating KIGA] to effectuate its stated purpose ... requires us to hold that the Cabinet's claim against the bonding companies is coexistent with its claim against the permittees under the mining permit."

Together the decisions in *KIGA I* and *KIGA II* establish that the Cabinet's cause of action against KIGA accrues when the Cabinet would first have had a claim against the permittee for a violation beyond that created by the insurer's insolvency. In this case,

that point in time was no later than the date on which a notice of noncompliance was issued to the permittee for a violation other than the mere failure to maintain a performance bond issued by a solvent insurer. Reviewing the record, it is apparent that on each of the bonds the Cabinet issued a notice of noncompliance regarding actual substantive violations of the mining reclamation statutes and regulations such as inadequate vegetation or improper grading and backfilling. In some instances there was one notice for failure to maintain an adequate bond and a second notice shortly thereafter for substantive violations, while in at least one case the substantive reclamation violations and bond adequacy violation were combined in one notice. Under either scenario, it is the date of the notice of noncompliance for actual reclamation violations which is dispositive of the issue at hand. Without question the Cabinet's cause of action against KIGA on any given bond accrued *no later than* the first date after the insurer's insolvency on which the Cabinet cited the permittee for substantive reclamation violations. All of the notices of noncompliance applicable to the properties secured by the bonds at issue on this appeal were issued more than seven years prior to the filing of the petition for declaratory relief by KIGA. At the time the petition was filed, no administrative actions had been commenced by the Cabinet. Thus, it is quite evident that the circuit court was correct in concluding that the Cabinet's causes of action had accrued and KRS 413.220(3), applicable by analogy, had run its course prior to the filing of KIGA's petition for declaratory relief.

Although the Cabinet suggests that the recent opinion in *Natural Resources and Environmental Protection Cabinet v. Whitley Development Corp.,* Ky.App., 940 S.W.2d 904 (1997), supports its position, we disagree. In that case the performance bonds in dispute included surety bonds issued by Travelers Indemnity Company and bonds secured by letters of credit issued by a bank. Neither Travelers nor the bank was insolvent. The mining permits expired at various times between 1979 and 1989 and notices of noncompliance were later issued for deficient

reclamation activities. Administrative proceedings for bond forfeiture were instituted in 1991. The circuit court held that the Cabinet's claims were barred by KRS 413.220(3) because the Cabinet did not institute bond forfeiture proceedings against Travelers or the bank within seven years of the dates upon which the right to institute such actions accrued. The circuit court concluded that an action against a surety "necessarily accrues on the date upon which the underlying permit expires, with the result that an action to enforce the surety's contractual obligation on such a bond must either be filed within seven years of that date or be barred by limitations." This court rejected that position, reasoning that an action does not accrue until the surety refuses to honor its obligation:

> Clearly, a surety cannot be deemed to be in default prior to the date upon which it is asked by appropriate demand to meet the contractual suretyship obligation. Thus, no action could have accrued against Travelers or Farmers until the date upon which they refused to honor their obligations as sureties after being called upon to do so, which was well within the seven-year statutory limitations period. Indeed, the record shows that no claims were asserted against Travelers or Farmers until after they were first notified by letter in May 1993 both that Whitley had been cited for noncompliance, and that they were entitled to undertake completion of the required reclamation work in lieu of bond forfeiture. Thereafter, the secretary of the cabinet entered final orders forfeiting the performance bond at issue, and Travelers paid the amount due on the forfeited bonds pursuant to KRS 350.032(3), while Farmers failed to honor the letters of credit presented to it for payment even though said drafts expressly provided that they would be "duly honored on due presentation to the drawee." Obviously, therefore, pursuant to the express provisions of its contract, no cause of action accrued against Farmers until the cabinet presented the drafts to Farmers for payment and payment was refused.

940 S.W.2d at 907.

The *Whitley Development* court noted that the Cabinet "filed an action against [the bank] by way of cross-claim within seven years of the date on which its claims accrued ...". As for Travelers, its payment of the bond amount into escrow was apparently a waiver of any statute of limitations defense. Given the facts in that case, it was unnecessary for the court to decide whether the statute of limitations applied literally or by analogy to administrative proceedings.

■ In any event, *Whitley Development* is distinguishable from this case because it involved solvent sureties against whom the Cabinet's claims did not accrue until those sureties failed to honor their respective obligations. Insolvent sureties, such as those whose bonds form the basis for the claims against KIGA in this case, are incapable of honoring their obligations. In essence, notice of their insolvency serves as notice of their "refusal" to honor their performance bond obligations. However, given the holding in *KIGA II* it is clear that KIGA's liability arises and a cause of action accrues only where the surety is insolvent *and* substantive mining reclamation violations exist. This requirement of substantive reclamation violations is not discussed in *Whitley Development* simply because a claim would not be asserted against a solvent surety in the first instance unless there were underlying substantive violations. Thus *KIGA II* and *Whitley Development* are fully consistent with each other and supportive of our conclusion that the Cabinet's causes of action against KIGA arose no later than the dates on which the notices of noncompliance regarding substantive reclamation violations were issued.

In light of the clearly applicable precedent in *KIGA II* and *Whitley Development*, the Cabinet's reliance on federal case law regarding accrual of a cause of action is misplaced. As for the Cabinet's argument that public policy favors a finding that a cause of action does not accrue until administrative proceedings are concluded, we disagree. The Cabinet would have no incentive to resolve promptly its claims against KIGA if it were allowed an unlimited time to pursue administrative proceedings, with the only time constraint being a requirement that a

judicial action be filed within seven years of the conclusion of those administrative proceedings. The Cabinet's statutory obligation to abate violations in the "most expeditious manner possible" is best encouraged and the public interest in minimizing surface coal mining's adverse effects on the Commonwealth is best honored by requiring the Cabinet to recognize that a cause of action accrues against KIGA when an administrative action could be commenced, not when it is concluded.

III. *EVEN WHERE THE VIOLATIONS ARE UNABATED AND CONTINUING, THEY DO NOT CONSTITUTE AN EXCEPTION TO KRS 413.220(3)*

█ The Cabinet's third argument is that the statute of limitations does not apply because the violations giving rise to the bond forfeitures are unabated and continuing. In support of its position, the Cabinet relies primarily on several state and federal cases involving nuisance and trespass claims. To counter the Cabinet's continuing violation theory, KIGA cites the exclusivity of the tolling provisions contained in KRS 413.240 and policy considerations favoring the conclusion that KRS 413.220(3) commenced to run upon issuance of the notices of noncompliance. Agreeing with KIGA's position, the circuit judge referred to KRS 413.150 which applies the limitations provisions prescribed by Chapter 413 to the Commonwealth and private persons alike, "except where a different time is prescribed by statute." Emphasizing the General Assembly's retention of a clearly articulated right to extend or change the limitation periods set out in Chapter 413, the trial judge found significant the lack of a statutory provision removing continuing violations from the periods set forth in KRS 413.220(3). He also noted that placing no time limitation on the Cabinet's election to pursue a claim would greatly reduce the incentive for the Cabinet to act swiftly in such matters. We agree.

In *Schwerman v. Commonwealth*, 99 Ky. 296, 38 S.W. 146, 148 (1896), the Court considered the factors for tolling the statute of limitations applicable to actions against sureties. At that time, the statute was codified as section 2551, a predecessor to KRS

413.220(3). The court concluded that "the only conditions or acts which do stop the running of statutes of limitation in favor of sureties are prescribed in section 2552," a predecessor to KRS 413.240. In light of this long-standing case law, we are persuaded the trial judge's analysis is correct: the legislature has the ability to carve out an exception to KRS 413.220(3) for continuing violations, so its inaction must be construed to manifest an intent to include them within the limitations period.

The Cabinet argues that the lower court's reasoning is insufficient because it does not address the "well-established" common law regarding continuing violations. We have reviewed the cases applying the concept and are unpersuaded. A common law trespass claim was the focus in *Fergerson v. Utilities Elkhorn Coal Co.*, Ky., 313 S.W.2d 395 (1958). Similarly, a common law nuisance claim was at issue in *Lynn Mining Co. v. Kelly*, Ky., 394 S.W.2d 755 (1965). The Cabinet cites no Kentucky law that extends the continuing violation premise in those nuisance and trespass cases to an action against a surety arising from a performance bond and we perceive no sound legal basis for so holding.

Furthermore, public policy considerations support this conclusion. KIGA cites *Commercial Standard Insurance Company v. Alabama Surface Mining Reclamation Commission*, Ala. Civ.App., 443 So.2d 1245 (1983), in which the Court interpreted a statute of limitation requiring complaints alleging violations of the Reclamation Commission's regulations to be filed within ninety (90) days of the event giving rise to the complaint. The Court rejected the Commission's argument that the limitations statute does not run in favor of a permittee or a surety on a mining operation where the violation is continuing, stating

> To adopt the Commission's interpretation would nullify and eliminate the limitation provision entirely. There would be a diminished incentive to press for early reclamation. There would be no end to the surety's obligation under the bond. To remove a time limit for enforcing reclamation is to encourage delay of reclamation.

443 So.2d at 1247. In our opinion, it is precisely because the violations are continuing and unabated that KRS 413.220(3) should be deemed applicable by analogy, as it is perhaps the only incentive for the Cabinet to promptly pursue such matters.

IV. *FILING OF PROOFS OF CLAIM WITH LIQUIDATORS FOR THE INSOLVENT SURETIES IS IRRELEVANT TO THE REQUIREMENT THAT SUIT AGAINST KIGA BE INITIATED WITHIN SEVEN YEARS*

Finally, the Cabinet asserts that it preserved its right to seek bond forfeiture by filing proofs of claims with the liquidators of the insolvent insurers and with KIGA. While such filings may have been required to preserve the Cabinet's rights against the insolvent insurers and to put KIGA on notice, they are totally irrelevant to the issue of whether the statute of limitations has been tolled for a cause of action against KIGA. In the seven years following issuance of notices of noncompliance, the Cabinet failed to initiate a proceeding against KIGA in any forum as required by KRS 413.220(3), applicable literally to a court proceeding and by analogy to an administrative proceeding. The Cabinet appears to confuse the filing of a proof of claim so as to preserve its rights to perhaps obtain some recovery against the insolvent surety with the institution of the proceedings against KIGA necessary to recover on a "covered claim" and satisfy the statute of limitations. They are clearly distinct steps with clearly disparate purposes. The fact that the filing of a proof of claim is essential to preserve the Cabinet's rights in liquidation proceedings, as well as to notify KIGA of its potential liability, has absolutely no bearing on whether the Cabinet proceeded against KIGA in a timely manner. In this case, the Cabinet plainly did not proceed against KIGA in the available seven-year period and its claims are time-barred.

The judgment of the Franklin Circuit Court is affirmed.

All concur.