COMMONWEALTH of Kentucky, DE-
PARTMENT OF REVENUE, FI-
NANCE AND ADMINISTRATION
CABINET; and John Farris Appoint-
ing Authority, Appellants,

v.

Jeffrey McDONALD; Donna Waldrum;
Donald Moore; Gerald Brownlee; and
Commonwealth of Kentucky, Person-
nel Board, Appellees.

No. 2007–CA–001626–MR.

Court of Appeals of Kentucky.

April 10, 2009.

Rehearing Denied June 2, 2009.

Discretionary Review Denied by
Supreme Court March 10, 2010.

Celia M. Dunlap Frankfort, KY, for Ap-
pellants.

Paul F. Fauri Frankfort, KY, for Appel-
lees.

Before CLAYTON, MOORE and
TAYLOR, Judges.

*OPINION*

MOORE, Judge.

The Commonwealth of Kentucky, De-
partment of Revenue, Finance and Admin-
istration Cabinet, appeals an opinion and
order of the Franklin Circuit Court from a
petition for review of a final order of the

Personnel Board. This appeal involves a matter of statutory interpretation and because we decide that the Franklin Circuit Court and Personnel Board did not interpret the statute at issue correctly, we reverse.

The underlying facts of this matter are not complicated. Jeffrey McDonald, Donna Waldrum, Donald Moore and Gerald Brownlee (collectively, the Appellees) are career employees of the Finance Cabinet employed as maintenance supervisors. They are merit employees protected under Kentucky Revised Statutes (KRS) 18A, *et seq.*

On August 29, 2002, Marvin D. Mills, Jr., Director for Division of Building Services of the Finance Cabinet, issued a memorandum to "All Operations Branch Maintenance Supervisors/Superintendents in Franklin County," informing them that all maintenance supervisors/superintendents were to be cross-trained by rotating building assignments every 24–36 months. The memorandum noted that the first rotation would take place officially on October 1, 2002, with the period from September 1 to September 30, 2002, considered as the "briefing/learning phase" so that "each Maintenance Supervisor will learn his new building . . . as a basis for the briefing/learning phase."

Later, on September 16, 2002, Mills issued a memorandum to "All Agency Management Finance Cabinet Owned Buildings" informing them of the new rotation schedule for all maintenance supervisors. This memorandum stated that cross-training for the new rotation program would begin on January 1, 2003.

Like the Appellees, Danny Clark, who is not a party to this appeal, was affected by the Finance Cabinet's decision to rotate the duties of its maintenance supervisors. Clark appealed the Finance Cabinet's action on December 20, 2002, to the Personnel Board. Approximately a month after Clark filed his appeal, Appellee Moore also filed an appeal with the Personnel Board.

In Clark's appeal he argued that the Finance Cabinet's action was an involuntary transfer and claimed he was a victim of discrimination. He alleged that he was performing the job duties of a Building Supervisor II, with a pay grade of twelve. Prior to the Cabinet's cross-training mandate, Clark was classified as a maintenance supervisor, with a pay grade of nine.

Moore also claimed before the Personnel Board that the Finance Cabinet's actions resulted in an involuntary transfer. Moore's appeal proceeded more quickly than Clark's. In just over four months, the Personnel Board adopted the findings of fact and conclusion of law of the hearing officer, dismissing Moore's claim for involuntary transfer. Moore did not appeal this action to the Franklin Circuit Court. Accordingly, Moore's first appeal is not before this Court on the merits.

The Personnel Board issued a final order in Clark's appeal in May 2004. Contrary to the decision reached in Moore's appeal, the Personnel Board decided that Clark had been involuntarily transferred and that the rotation in his duties resulted in a reclassification. The Personnel Board, adopting the recommendation of the hearing officer, ordered that the Cabinet reclassify Clark from a maintenance supervisor to a Maintenance Superintendent I, effective January 1, 2003, placing Clark at a higher pay level.

After this ruling, the Finance Cabinet reclassified all other maintenance supervisors prospectively. The Personnel Cabinet approved the Finance Cabinet's request to approve the reclassification of all maintenance supervisors to Maintenance Superintendent I status. The effective date of this action was August 1, 2004. All

affected employees received a pay increase.

Appellees, including Moore, filed an appeal with the Personnel Board in late August 2004, seeking to have their reclassifications made retroactive to January 1, 2003, just as Clark's had been. According to the Appellees, January 1, 2003, was the date they began cross-training and was the date they should have been reclassified as Maintenance Superintendents I at the higher pay level.

The Finance Cabinet moved to dismiss the Appellees' actions before the Personnel Board, arguing they were untimely. Pursuant to KRS 18A.095(29):

[n]otwithstanding any other prescribed limitation of action, an employee that has been penalized, but has not received a written notice of his or her right to appeal as provided in this section, shall file his or her appeal with the Personnel Board within one (1) year from the date of the penalization or from the date that the employee reasonably should have known of the penalization.

Pursuant to KRS 18A.075(1), the Personnel Board promulgated administrative regulations consistent with KRS 18A.095, in relevant part as follows:

An appeal or a document relating to an appeal shall be filed with the Personnel Board through the office of the executive director within the time period set forth in KRS 18A.095 after receiving notification of the penalization or after becoming aware of the penalization through the exercise of due diligence.

101 Kentucky Administrative Regulation (KAR) 1:365 § (3)(1).

The Finance Cabinet argued that the Personnel Board lacked jurisdiction to hear the appeals because they were filed outside the one-year period after the Appellees' duties effectively changed on January 1, 2003. The hearing officer denied the motion to dismiss by an interim order with regard to Appellees McDonald, Waldrum and Brownlee. These Appellees were permitted to proceed with their claims of improper classification, but were limited in seeking relief for their claims to one year before their appeals were filed. As to Appellee Moore, the hearing officer dismissed his appeal, ruling that Moore's earlier appeal constituted a bar to his second appeal.

Later, the Finance Cabinet renewed its motion to dismiss. It stressed that KRS 18A.095(29) contained a one-year limitation period for a merit employee to request retroactive relief for any penalization. The hearing officer noted that in the Finance Cabinet's renewed motion to dismiss, it agreed that the "reclassification is a continuing penalization." The Finance Cabinet, however, disputed that the Appellees were entitled to retroactive relief.

The hearing officer, in his recommended order which was adopted by the Personnel Board, concluded that his interim order was incorrect. He determined that the Appellees' request for retroactive relief was not limited to the one-year period immediately preceding their respective appeals. The hearing officer further decided that Appellee Moore's second appeal was not barred by *res judicata* because it did not include the issue of reclassification. According to the hearing officer, the improper classifications of the Appellees were "ongoing penalizations." The hearing officer reasoned that the statute of limitations under KRS 18A.025(29) did not begin to run until the Appellees were properly reclassified on August 1, 2004. Accordingly, their appeals to the Personnel Board were timely, and they were entitled to have their reclassification of Maintenance Superintendent I made retroactive to January 1, 2003, at the higher pay

grade. The Personnel Board adopted the hearing officer's recommendations.

The Finance Cabinet appealed the final order of the Personnel Board to the Franklin Circuit Court. The circuit court determined that there were no factual issues under review; rather, only issues of law were involved. Accordingly, it reviewed the matter *de novo.* The circuit court ruled:

> [e]ven though the Finance Cabinet knew that the additional responsibilities and functions of the re-classified position were performed as early as January 1, 2003, only at reclassification was there an acknowledgment to the Individual Respondents of a penalty. And when their salary increments were extended to take effect 20 months after the additional duties of a Maintenance Supervisor I were performed, that constituted an abridgement or denial of their rights. Therefore, these two personnel actions occurred on August 1, 2004.

Rather than finding an ongoing penalization as the Personnel Board did, the circuit court determined that the Appellees "could have reasonably known of their position's misclassification only on August 1, 2004." Thus, the court concluded the actions were not time-barred.

The circuit court agreed with the Personnel Board that Appellee Moore's second appeal to the Personnel Board was not barred by *res judicata.* Although Moore did not pursue the misclassification aspect of the Finance Cabinet's action in his first appeal, the circuit court determined that this did not bar him from asserting it in his second appeal.

The circuit court affirmed the decision of the Personnel Board. The Finance Cabinet thereafter appealed that decision to this Court for review.

The Finance Cabinet maintains that the provisions of KRS 18A.095(29) apply to reclassifications. According to the Finance Cabinet, because Appellees were not given a written notice of their right to appeal, they had one year from the date when they were initially penalized or should have reasonably known they were penalized by the rotation in duties assignment. The applicable regulation, 101 KAR 1:365, also requires awareness of a penalization under a due diligence standard. The Finance Cabinet stresses, therefore, that Appellees had one year from January 1, 2003, (the effective date of rotation in duties), to file an appeal with the Personnel Board.

■■■ The review of this matter is limited to the interpretation of KRS 18A.095(29), which is an issue of law that we review *de novo. Commonwealth v. Garnett,* 8 S.W.3d 573, 575–76 (Ky.App. 1999). A number of statutory construction principles bind courts. We "may not interpret a statute at variance with its stated language." *SmithKline Beecham Corp. v. Revenue Cabinet,* 40 S.W.3d 883, 885 (Ky. App.2001). "[S]tatutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required." *Commonwealth v. Plowman,* 86 S.W.3d 47, 49 (Ky.2002). Further, we cannot add or subtract from the language used in a statute. *Commonwealth v. Harrelson,* 14 S.W.3d 541, 546 (Ky.2000).

■■■ Upon much research and review, we find little interpretation of KRS 18A.095(29). The Board, the circuit court, and Appellees rely greatly on *Commonwealth, Personnel Board v. Gregory,* 864 S.W.2d 919 (Ky.App.1993). Their view is that *Gregory* supports that the Appellees' appeal to the Personnel Board was not time-barred because they are entitled to be paid the benefits they did not receive

due to an improper classification and should be made whole where they suffered a continuing violation or ongoing penalization.

Despite the arguments to the contrary, the problem with the reliance on *Gregory* is the enactment of KRS 18A.095(29), effective July 15, 1998. We cannot ignore the fact that after the *Gregory* decision, the General Assembly enacted a one-year time limit for merit employees, who did not receive written notification of a penalization, to file an appeal with the Personnel Board.

There are actually no references to continuing violations or ongoing penalizations in the relevant statutes or regulations. Specifically, in reference to the time period to file an appeal with the Personnel Board, there are no exceptions to the time limits for continuing violations or ongoing penalizations in the pertinent statutes or regulations. When the General Assembly enacted KRS 18A.095(29) in 1998, it could have carved out an exception for continuing violations wherein an employee could receive benefits he or she did not get due to a failure to reclassify. *See e.g., Commonwealth, Natural Resources and Environmental Protection Cabinet v. Kentucky Ins. Guaranty Ass'n,* 972 S.W.2d 276, 285 (Ky.App.1997). The General Assembly's "inaction must be construed to manifest an intent to include them within the limitation period." *Id.* To add a period for continuing violations, a concept not included anywhere in KRS 18A, *et seq.,* would "nullify and eliminate the limitation provision entirely." *Id.* Undeniably, the view of the Appellees, the Personnel Board, and the circuit court totally nullifies KRS 18A.095(29). As this is impermissible, we cannot agree with this position.

Moreover, under well-established statutory interpretation principles, we are not permitted to add or subtract from the language of KRS 18A.095(29). Consequently, any theory of expanding the limitation period in KRS 18A.095(29) to include continuing violations is contrary to the unambiguous language of the statute. There being no ambiguity in regard to this, it is not appropriate for the Court to further engage in analysis concerning interpretation of the statute under review. Moreover, "[a]n administrative body shall not by internal policy, memorandum, or other form of action: (a) [m]odify a statute or administrative regulation; [or] (b) [e]xpand upon or limit a statute or administrative regulation...." KRS 13A.130(1). Any such action is "null, void, and unenforceable." KRS 13A.130(2).

We additionally disagree with the circuit court's analysis that the penalization occurred only on the date the Finance Cabinet officially reclassified the Appellees' positions and therefore, it was only at this "acknowledgment" that the Appellees could have known of a penalty. This interpretation of KRS 18A.095(29) adds language to the statute. KRS 18A.095(29) is clear that it applies to any employee who has been penalized, either from the date of the penalization or from when they should have known of the penalization. It does not require an acknowledgment of the penalization by the appointing authority. To conclude that a penalization only takes place on the date the appointing authority makes an action official or when it acknowledges a penalty may result in a negative impact on merit employees. If penalizations only take place once the appointing authority acknowledges them, how can a merit employee have a cause of action for a penalization? Under this reasoning, at the point the employee receives official acknowledgment of the penalization, the penalization is effectively removed. Consequently, we find this in-

terpretation inconsistent with the clear statutory language of KRS 18A.095(29).

The Appellees' right to appeal the Finance Cabinet's action to the Personnel Board was created by the legislature and is limited by legislative conditions that require strict compliance. The Appellees were notified that the rotation-of-duties assignment would begin on January 1, 2003, but they were not reclassified at that point with a higher pay grade. Moreover, based on the prior memorandum in late 2002 sent to maintenance supervisors, an argument could even be made that they were on notice of the adverse action earlier. Either way, they failed to file their appeal timely. Having failed to do so, their appeals to the Personnel Board were untimely and are barred. Thus, the issue of whether Appellee Moore's case is barred by *res judicata* is moot.

For the reasons stated, the opinion and order of the Franklin Circuit Court is reversed.

ALL CONCUR.