David A. WEINBERG, d/b/a David A. Weinberg, P.S.C., Appellant,

v.

Fariba GHARAI, Appellee.

No. 2010–CA–001134–MR.

Court of Appeals of Kentucky.

April 15, 2011.

David A. Weinberg, Lexington, KY, for appellant.

Andrew J. Ruzicho, Lexington, KY, for appellee.

Before TAYLOR, Chief Judge, CAPERTON and WINE; Judges.

*OPINION*

CAPERTON, Judge:

The Appellant, David A. Weinberg, d/b/a David A. Weinberg, P.S.C., appeals from the May 18, 2010 opinion and order of the

Fayette Circuit Court denying his request for attorney fees in connection with his representation of the Appellee, Dr. Fariba Gharai. Having reviewed the record, the arguments of the parties, and the applicable law, we affirm.

On March 22, 2005, the parties entered into a contingency fee contract of employment, whereby Dr. Gharai employed Weinberg to litigate various claims that she had against the University Hospital of the Albert B. Chandler Medical Center, Inc., d/b/a College of Medicine, Chandler Medical Center, University of Kentucky; and Victor A. Ferraris. These claims included breach of contract, discrimination, and defamation, which occurred during Dr. Gharai's residency in cardiothoracic surgery. That contract provided as follows:

> One-third (1/3) contingency fee of any and all monies recovered concerning the claims arising out of the above-specified employment. Any attorney's fees recovered as a result of said claims shall constitute a credit against the contingency fee. However, should the recovery of attorney's fees be less than the amount equal to one-third (1/3) of the recovery, Client shall be responsible for the difference. In the event of an appeal of a Judgment, either in favor of or against the client, the contingency fee set forth herein shall increase to forty percent (40%) of any recovery, subject, however, to the same terms and conditions set forth in the preceding paragraph.

Pursuant to the contract, Dr. Gharai had sole authority for determining the amount of any pre-suit settlement. The contract required Weinberg to obtain Dr. Gharai's permission and authority to settle for any specific amount.

Following several years of litigation, including a period of delay during which Weinberg had medical problems, the defendants filed a motion for summary judgment. The case was mediated, but settlement was not achieved. Accordingly, in response to a motion for summary judgment filed by the defendants below, the trial court held a hearing on April 24, 2009, wherein it orally sustained the motion and provided its reasons for doing so. Weinberg called Dr. Gharai that evening and left a message informing her of the court's ruling. On April 26, 2009, Dr. Gharai returned Weinberg's call and, during that conversation Weinberg advised Dr. Gharai of her options in response to the Court's ruling, including the timeframe associated with those options, which he stated were to either "drop the case" or "appeal."[1]

Weinberg and Dr. Gharai had a difference of opinion regarding the terms of Weinberg's employment contract with respect to appeals. Weinberg testified during the hearing below that the contingency contract provision did not include appealing a "summary judgment dismissal" by the Court, but only covered an appeal resulting from a trial on the merits. Weinberg admitted in testimony that he had "no recollection" that the distinction between summary judgment and a judgment on the merits for appeal purposes under the contract was discussed with Dr. Gharai at the time the contract was entered into by the parties. Weinberg further testified that he believed his services were completed under the contingency fee contract following the court's entry of summary judgment, and that he was permitted to renegotiate the contract.[2] Dr. Gharai testified that the

---

1. In response, Dr. Gharai explained that she could not drop the case because the defendant, Dr. Ferraris, continued to give her bad references and this hindered her ability to obtain employment.

2. Weinberg admitted that he was trying to renegotiate the contract during the course of the hearing in the following colloquy:

> Q: Now at this point in time, when, when you were renegotiating—You were actually

first time she heard about this distinction between an appeal from summary judgment, and an appeal from a jury verdict on the merits, was after the case was dismissed.

Weinberg asserts that, with respect to his assertion that the contract referred only to an appeal of a jury verdict, he consulted with outside counsel and was advised that the contract did not automatically require him to defend or prosecute an appeal. Weinberg states that, since a summary judgment was granted rather than a judgment following a trial, he was entitled to negotiate a contract for his services on appeal. Weinberg also states that he discussed as much with Dr. Gharai and sent a follow-up letter dated April 27, 2009, outlining the conversation and terms of employment for prosecuting an appeal. This included his request for a $20,000 retainer prior to filing the Notice of Appeal.

On May 6, 2009, Dr. Gharai sent Weinberg an e-mail acknowledging receipt of his April 27, 2009 letter. Therein, Dr. Gharai stated her belief that the contract did not provide for any retainer on appeal, and cited the contract language within the e-mail as follows:

"In the event of an appeal of a judgment, either in favor of or against the client, the contingency fee set forth herein shall increase to forty percent (40%) of any recovery, subject to the same terms and conditions set forth in the preceding paragraph." I am very

confused? ? ? Any advise (sic) since we are running out of time?

*See* Hearing Exhibit 5; Finding of Fact No. 11; Transcript, pp. 55–6.

Weinberg states that during the time following the sending of the letter, he received the court's May 4, 2009 order of summary judgment in the case. At that time, he had a phone conversation with Dr. Gharai in which the two again discussed his fee arrangement for an appeal. Weinberg states that at the conclusion of that conversation, his employment for purposes of filing an appeal was still in question.

Dr. Gharai requested a conference call between herself, Weinberg, and her fiancé, Dr. Fields,[3] which took place on May 13, 2009. Dr. Gharai testified that she requested this conference call for the purpose of obtaining Fields' opinion on Weinberg's demand for a $20,000 retainer. During that conference call, Weinberg again repeated his request for payment of the retainer prior to filing a notice of appeal. Both Drs. Gharai and Fields testified at the hearing that Weinberg stated he could not continue representing Dr. Gharai on appeal without the retainer. Fields testified that he told Weinberg that Weinberg was breaching the contract and that it would be difficult for Dr. Gharai to find another attorney within the time constraints. According to Fields, Weinberg said that he was not obligated to take the case to appellate court. Fields agreed, but states that he told Weinberg that if he did

---

renegotiating the contract for appeal is what you were doing at this point, were you not?

**A:** I guess we were trying to reach some agreement as to the appeal. Yes.

**Q:** So the, the contract, Hearing Exhibit 1, the contingency fee contract, became null and void in your eyes, in your opinion at this point? In other words, it was no longer valid?

**A:** It was only valid if the Court of Appeals brought it back. And that would be on a third.

(Transcript, Weinberg testimony, p. 37).

3. Dr. Fields was a former college professor at the University of Connecticut, an owner of a financial business, and served as an expert witness in cases concerning financial issues, ability to pay, insurance contracts, damages calculations, and pension plans.

not do so, then he would not be entitled to a fee and would be voiding the contract.

Following the call, Dr. Gharai refused to pay the retainer and Weinberg refused to withdraw his demand for it. Subsequently, on May 15, 2009, Weinberg sent a letter to Dr. Gharai, stressing the importance of meeting the appeal deadline and stating that, "Any attorney you select should be aware of this." In the same letter, Weinberg stated, "I wish you the best, not only in this matter, but in all your professional and personal endeavors. As you stated, let's keep in touch and if you need anything, please feel free to contact me." Dr. Gharai testified that she interpreted this letter as "good luck in the case," and felt that she had no choice but to seek out another attorney to handle the appeal. Dr. Gharai also testified that had Weinberg honored their contract, she would have welcomed his continued representation.

Sometime thereafter, Weinberg received a call from Leslie Dean advising that she had been retained by Dr. Gharai to prosecute an appeal. On May 23, 2009, Dean sent Weinberg a copy of the Notice of Appeal, Entry of Appearance, Designation of Record, and Case History. Dean subsequently had major surgery which necessitated the retaining of new counsel. Accordingly, Dr. Gharai then retained present counsel, Andrew Ruzicho.

On May 29, 2009, Weinberg received an e-mail from Dr. Gharai, formally notifying him that Andrew Ruzicho was replacing Leslie Dean as her attorney. On that same day, Ruzicho sent an e-mail to Weinberg advising that he was replacing Dean as Dr. Gharai's attorney. In response, Weinberg filed his Notice of Withdrawal and Attorney's Lien on June 3, 2009, certifying a copy to Ruzicho. On June 12, 2009, after retaining the services of Ruzicho and after the filing of Weinberg's attorney's lien, Dr. Gharai sent Weinberg a certified letter notifying him that she had hired Ruzicho. There was no reference in that letter indicating that Dr. Gharai was objecting to, or would be objecting to, Weinberg's lien. On June 17, 2009, Ruzicho filed his entry of appearance in this matter.

On July 7, 2009, in response to a handwritten request from Ruzicho, Weinberg sent Ruzicho a letter including documents requested in connection with the case. Prior to reaching the final settlement, at Ruzicho's request, an office conference between him and Weinberg was held on September 9, 2009. Subsequent to that conference, Ruzicho and Weinberg exchanged e-mails regarding potential settlement of Weinberg's claim for attorney fees. Thereafter, on January 6, 2010, another meeting was held at Weinberg's office, at Ruzicho's request. At that time, Ruzicho presented Weinberg with a Letter of Agreement regarding Weinberg's claim for the attorney fees. The Agreement was modified and initialed, and provided that one third of any amount recovered on behalf of Dr. Gharai during the appeal be placed in Ruzicho's escrow account.

Following approximately five months of negotiations with the defendants below, Ruzicho and Dr. Gharai negotiated a $200,000 settlement of the case on January 29, 2010, and also reached an agreement on future references regarding Dr. Gharai in order to minimize any adverse effect upon her career.[4] Upon notice of the set-

---

4. The settlement agreement between the parties specifically addressed the attorney's lien filed by Weinberg. It required that Weinberg be provided notice of the settlement, required escrowing the funds, and set forth a procedure for resolution of the lien. The agreement read, in pertinent part, as follows: "The parties acknowledge that the payments made

tlement, Weinberg filed a motion for hearing on March 1, 2010, on the attorney fees issue. In response, Dr. Gharai filed a Motion to Dismiss Weinberg's lien. A first hearing was held by the court on this issue on March 26, 2010, and resulted in an unsuccessful mediation session. The court then scheduled a final hearing on Weinberg's motion for attorney fees on April 9, 2010. Following the filing of briefs, the court entered an opinion and order on May 18, 2010. Therein, the court found that Weinberg was not entitled to attorney fees, and sustained Dr. Gharai's motion to dismiss Weinberg's lien. This appeal followed.

 In reviewing the arguments of the parties, we note that we review the trial court's findings of fact pursuant to Kentucky Rules of Civil Procedure (CR) 52.01, and will not disturb those findings unless clearly erroneous. *Owens–Corning Fiberglas Corp. v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998). Findings of fact are not clearly erroneous if supported by substantial evidence. Substantial evidence is that evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable people. *Kentucky State Racing Commission v. Fuller,* 481 S.W.2d 298, 308 (Ky.1972). With respect to the trial court's application of the law to those facts, we will engage in a *de novo* review. *Keeney v. Keeney,* 223 S.W.3d 843 (Ky.App.2007).

On appeal, Weinberg argues that the findings of the trial court, in denying his request for attorney fees, were clearly er-

roneous, and that the court misapplied the applicable law to the facts of the case. Weinberg maintains that the contract failed to provide for compensation for an appeal on a summary judgment. He argues that this is so because the contract does not specifically reference an appeal from an order of summary judgment, but instead simply says, "In the event of an appeal of a judgment...."

Weinberg's second argument is that Dr. Gharai waived her right to object to Weinberg's entitlement to attorney fees, or, in the alternative, that she should be estopped from asserting such a defense. In support of that argument, Weinberg states that Dr. Gharai waived any objection to his attorney's lien by not objecting to it until her March 15, 2010 motion to dismiss the lien. He states that, despite multiple conversations between himself and Ruzicho, he was never notified that Dr. Gharai would object to the lien. Weinberg also asserts that the Letter of Agreement, which Ruzicho presented to him concerning the deposit of any settlement funds into a trust account, indicated that his entitlement to a fee was not in question. Weinberg argues that this Letter of Agreement was a binding contract between himself and Dr. Gharai because it established the method for determining his attorney fees if the parties could not agree on the amount.

Finally, Weinberg argues that he is entitled to a fee on a *quantum meruit* basis. He argues, in apparent reliance upon *Baker v. Shapero,* 203 S.W.3d 697 (Ky.2006),

herein are subject to a lien filed of record on June 3, 2009 by Gharai's former legal counsel, David Weinberg. With the knowledge and consent of Weinberg, as evidenced by his consent attached as Attachment A, Sixty–Six Thousand Six Hundred and Sixty–Six Dollars ($66,667.00) shall be paid to the trust account of Gharai's current counsel, Andrew J. Ruzi-

cho, who shall disburse such funds only upon release of the lien asserted in accordance with KRS [Kentucky Revised Statutes] 376.460 and SCR [Supreme Court Rules] 3.130(1.15). The amount of any fund released to David Weinberg, *if any,* will be determined by settlement, arbitration, or court order." (Emphasis added).

that if any attorney-client relationship terminates, for any reason, before completion of the matter for which he was retained, then the attorney is entitled to a fee on a *quantum meruit* basis.

In response to the arguments made by Weinberg, Dr. Gharai asserts that Weinberg breached the attorney-client agreement and attempted unsuccessfully to renegotiate the contract, which forced her to retain another attorney for representation on appeal. While Dr. Gharai acknowledges that Weinberg had the right to attempt to renegotiate the contract if he wished, she asserts that the language of the contract concerning appeals was clear. Accordingly, if Weinberg wished to modify the original contract and continue his representation under new terms, then she had to agree to any proposed modification thereto, because if not, then Weinberg would be breaching the contract as originally written, thereby effectively terminating the contract between them. She asserts that, when she refused to consent to the modification, and because Weinberg refused to perform under the contract as written, she had no choice but to seek other counsel for representation on appeal.

Dr. Gharai denies that she waived any right to object to Weinberg's attorney's lien, and asserts that in placing the settlement funds in an escrow account, she was only acting as the law required in situations where an attorney's lien existed, and that the Letter of Agreement was in no way intended to be a contract between herself and Weinberg for the payment of fees. Dr. Gharai also disagrees with Weinberg's request for fees on a *quantum meruit* basis, and asserts that he has misapplied *Baker, supra,* to the facts sub judice. Finally, Dr. Gharai asserts that Weinberg's appeal is frivolous, and that, accordingly, she is entitled to reasonable attorney fees and costs for her defense thereof.

 Having reviewed the record, the arguments of the parties, and the applicable law, we are in agreement with the court below that the contract, as it was drafted concerning the issue of representation in the event of an appeal, was clear. Weinberg was the author of the contract at issue, and our law is clear that the language of a contract, if susceptible to two meanings, will be construed against the drafter. *See Theatre Realty Co. v. P.H. Meyer Co.,* 243 Ky. 346, 48 S.W.2d 1, 2 (1932). In this instance, although Weinberg argues that he defined "judgment" in the contract as excluding any "summary judgment," this distinction was not included in the contract itself and, indeed, was only made after the summary judgment was actually entered. We agree with the court below that if such a distinction was to be made, it should have been made in the original contract and not after the case was dismissed.

Secondly, if we accept Weinberg's testimony that his services under the contract were completed upon entry of the summary judgment, then he would not be entitled to attorney fees in any event, as Dr. Gharai had recovered nothing at that time. Clearly, Weinberg knew, or should have known, that the attorney-client agreement provided that he only collected attorney fees if he settled or prevailed on the merits. Thus, accepting Weinberg's testimony that the contract was completed upon entry of the summary judgment, no attorney fees were owed because no monies had been recovered or were due Dr. Gharai. Alternatively, if we interpret the contract as Dr. Gharai contends, then for Weinberg to collect his attorney fees he would have needed to prosecute the appeal, and ultimately collect damages or monies, for a contingency fee to be assessed. He did

not do so. Therefore, at the time Weinberg filed the lien for "fees," Dr. Gharai was not entitled to collect any monies and no contingency fees were owed.

■■ We disagree with Weinberg's argument that Dr. Gharai waived her right to object to his attorney's lien or that she was estopped from objecting. Our law is clear that a "waiver" is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party, at his option, might have demanded or insisted upon. *Barker v. Stearns Coal & Lumber Co.*, 291 Ky. 184, 163 S.W.2d 466, 470 (1942). Weinberg argues that, because Dr. Gharai did not immediately object to his lien, she waived her right to do so. We disagree. We note that as soon as the case did settle and Weinberg filed a March 1, 2010 motion for hearing on his lien, Dr. Gharai timely filed a request for dismissal. Accordingly, we are not persuaded that any waiver occurred in this instance.

■ With respect to Weinberg's argument concerning equitable estoppel, we note that equitable estoppel precludes a party from asserting a right inconsistent with a position previously taken by him or her. Such a claim requires proof of three elements: (1) conduct which amounts to false representation or concealment of the facts, or, at the least, which is calculated to convey an impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the real facts. *Smith v. Howard*, 407 S.W.2d 139, 143 (Ky.1966). Likewise, the party claiming estoppel must show: (1) lack of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a nature as to change his position prejudicially. *Id.* We do not believe that these elements were satisfied sub judice.

While Weinberg argues that the Letter of Agreement estops Dr. Gharai from objecting to his lien, we note, as indicated herein *supra,* that the agreement specifically provided that if the fee issue could not be settled, then either arbitration or court order would be required to resolve it. Thus, we fail to see how Weinberg interprets this letter as an agreement on the part of Dr. Gharai that he was actually entitled to any fees. Indeed, it seems clearly to be an intention on the part of Dr. Gharai to provide notice of a possible settlement, notice that the funds would be escrowed as required by Kentucky law,[5] and a method to resolve the lien if it were disputed. We find nothing in the agreement that would give rise to a claim for equitable estoppel, and decline to find otherwise.

■ Finally, this Court is not persuaded by Weinberg's assertions that he is entitled to a *quantum meruit* fee. Our reading of *Baker v. Shapero, supra,* indicates that Weinberg would only be entitled to fees if he was terminated without cause before completion of the contract. Such was not the case sub judice. Indeed, Weinberg himself testified that he believed his services under the contract to be complete upon entry of the summary judgment and, clearly, Dr. Gharai had not terminated Weinberg's employment as her counsel at that time. Regardless, it is clear that Weinberg himself refused to honor the contract as it was written and insisted upon renegotiation of its terms. Thus, Dr. Gharai had little choice but to obtain other

5. *See* SCR 3.130(1.15)(b).

counsel to represent her on appeal. Accordingly, we do not find *Baker* applicable to the facts sub judice, and disagree with Weinberg's assertion that he is entitled to fees on a *quantum meruit* basis.

Having so found, we briefly address Dr. Gharai's assertion that Weinberg's appeal on these issues is frivolous, and her accompanying request for reasonable attorney fees and costs incurred in defending same. Dr. Gharai asserts that, pursuant to CR 73.02(4), Weinberg's appeal is so lacking in merit that no reasonable attorney could assert such arguments. We disagree. While we do not find Weinberg's arguments on appeal to be persuasive, we are not of the opinion that these arguments were so without merit that no reasonable individual would assert them. Accordingly, we decline to disturb the trial court's denial of Dr. Gharai's request for attorney fees and costs associated with her defense of this appeal.

Wherefore, for the foregoing reasons, we hereby affirm the May 18, 2010 opinion and order of the Fayette Circuit Court denying Weinberg's request for attorney fees.

ALL CONCUR.