RENDERED:  MARCH 15, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1016-MR

H.M.[1]      APPELLANT

APPEAL FROM SCOTT CIRCUIT COURT
v.      HONORABLE JEREMY MICHAEL MATTOX, JUDGE
ACTION NO. 18-CR-00310

COMMONWEALTH OF KENTUCKY      APPELLEE

AND

NO. 2022-CA-1195-MR

H.M.      APPELLANT

APPEAL FROM SCOTT CIRCUIT COURT
v.      HONORABLE JEREMY MICHAEL MATTOX, JUDGE
ACTION NO. 18-CR-00310

COMMONWEALTH OF KENTUCKY      APPELLEE

---

[1] Appellant's full name is used in his opening brief and the trial court record.  However, we agree with the Commonwealth that usage of initials when referring to the respondent in proceedings held pursuant to Kentucky Revised Statutes (KRS) Chapter 202C is proper under Kentucky Rules of Appellate Procedure (RAP) 31(B), which provides that "[i]nitials or a descriptive term must be used instead of a name in cases involving . . . mental health . . . ."

AND

NO. 2022-CA-1196-MR

H.M.                                                                                                    APPELLANT


                                    APPEAL FROM SCOTT CIRCUIT COURT
v.                          HONORABLE JEREMY MICHAEL MATTOX, JUDGE
                                        ACTION NO. 22-H-00029-001


COMMONWEALTH OF KENTUCKY                                                    APPELLEE



OPINION AND ORDER
DISMISSING IN PART AND AFFIRMING IN PART

** ** ** ** **

BEFORE:  COMBS, GOODWINE, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  H.M. appeals from the Scott Circuit Court's decision to

involuntarily commit him to the Kentucky Correctional Psychiatric Center (KCPC)

pursuant to Kentucky Revised Statutes (KRS) Chapter 202C.  We dismiss appeal

No. 2022-CA-1016-MR as being from a nonfinal order.  We otherwise affirm.

         We need not delve deeply into the tragic underlying facts.  It is

uncontested that H.M. bludgeoned his caretaker to death, for which he was indicted

for murder.  It is also uncontested that H.M. suffers from serious mental illnesses,

such as schizophrenia, and was found incompetent to stand trial with no reasonable

prospect for improvement.  In accordance with KRS 202C.020(1), the

Commonwealth then sought to have H.M. involuntarily committed.[2]

Our Supreme Court has explained the purpose behind KRS 202C as

follows:

> On April 1, 2021, KRS 202C went into effect.  The statutes were written to close a perceived loophole in KRS 202A and 202B, the statutes governing involuntary civil commitment.  Under KRS 202A, a mentally ill person may be involuntarily hospitalized if 1) they present a danger or threat of danger to self, family, or others because of the mental illness, 2) they can reasonably benefit from treatment, and 3) hospitalization is the least restrictive alternative.  KRS 202A.026.  KRS 202B requires the same criteria be met for involuntary commitment of an intellectually disabled person, rather than a mentally ill person.  KRS 202B.040.  Both KRS 202A and 202B require that an individual be able to "reasonably benefit from treatment."  So, if a person is

---

[2] KRS 202C.020(1) provides in relevant part:

> When a defendant who is charged with a qualifying offense has been found . . . to be incompetent to stand trial with no substantial probability that the defendant will attain competency within three hundred sixty (360) days, the Commonwealth's attorney's office . . . **shall** immediately petition the Circuit Court that found the defendant incompetent to stand trial . . . for an involuntary commitment proceeding, to include an evidentiary hearing and a commitment hearing, if applicable, under this chapter.

(Emphasis added).  When used in a statute, shall "is mandatory[.]"  KRS 446.010(39).

Thus, the Legislative Branch has facially required an independently elected member of the Executive Branch to file a pleading in the Judicial Branch. *Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 169 n.55 (Ky. 2009) (noting the Commonwealth Attorney is part of the Executive Branch).  We decline to determine on our own initiative whether that statutory mandate is a violation of the separation of powers doctrine. *See* KY. CONST. §§ 27, 28.

found to be incapable of reasonably benefitting from treatment, then they are not eligible for involuntary commitment under KRS 202A or 202B.

To create a process to involuntarily commit an incompetent criminal defendant who cannot reasonably benefit from treatment, the legislature passed House Bill (HB) 310, creating KRS 202C.

*G.P. v. Bisig*, 655 S.W.3d 128, 129 (Ky. 2022).

We shall discuss in more detail than we usually discern is necessary the underlying procedural history of these appeals because there is no precedent addressing KRS 202C on the merits. Consequently, the parties ask us repeatedly in their briefs for guidance, which we shall endeavor to provide in this Opinion. However, though we have carefully considered the parties' briefs, we shall not discuss any argument we deem irrelevant, redundant, or otherwise unnecessary to address so as to keep this Opinion from becoming completely unwieldy.

We also note at the outset of our discussion that we shall not resolve H.M.'s assertions that various aspects of KRS 202C are unconstitutional. H.M. admits that he did not comply with the mandatory procedures for challenging the constitutionality of a statute contained in KRS 418.075, such as notifying the Attorney General of Kentucky of the challenge(s) while the matter was pending in circuit court.[3] Our Supreme Court has held that strict compliance with KRS

---

[3] KRS 418.075(1) provides in relevant part:

418.075 is required before an appellate court may resolve on the merits a challenge to the constitutionality of a statute. *Benet v. Commonwealth*, 253 S.W.3d 528, 532 (Ky. 2008). Thus, though we shall note some potential constitutional infirmities in KRS 202C, we decline to opine definitively on them.

Before a person may be involuntarily committed under KRS 202C, two hearings must be held: an evidentiary hearing, which we shall deem a "guilt" hearing, and then a commitment hearing. We shall discuss each in detail.

But even before the guilt hearing occurs, the trial court is required to appoint a guardian *ad litem* for the respondent (who formerly was a criminal defendant) even though the guardian is not permitted to participate in the guilt hearing. *See* KRS 202C.020(2) ("Upon the filing of the petition, the court shall assign a guardian ad litem to represent the needs and best interest of the respondent. The guardian ad litem shall be a full and active participant in all proceedings **other than the evidentiary hearing** under KRS 202C.030 and shall

---

(1) In any proceeding which involves the validity of a statute, the Attorney General of the state shall, before judgment is entered, be served with a copy of the petition, and shall be entitled to be heard . . . .

(2) In any appeal to the Kentucky Court of Appeals or Supreme Court . . . which involves the constitutional validity of a statute, the Attorney General shall, before the filing of the appellant's brief, be served with a copy of the pleading, paper, or other documents which initiate the appeal in the appellate forum. This notice shall specify the challenged statute and the nature of the alleged constitutional defect.

independently investigate, assess, and advocate for the defendant's [*sic* – respondent would be the more proper term] best interest.") (emphasis added). The respondent's criminal defense attorney is not replaced by the guardian *ad litem*. *Id.* The upshot is that the respondent is represented by his or her original criminal defense attorney alone at the guilt hearing, but both the criminal defense attorney and the guardian *ad litem* may participate at a commitment hearing.

The first hearing is an "adversarial evidentiary hearing on the record . . . ." KRS 202C.030(1). Unless the respondent waives[4] holding it, which is permitted under KRS 202C.030(2), the adversarial evidentiary hearing must be held "within twenty (20) days, excluding weekends and holidays, of the filing of a petition . . . ." KRS 202C.030(1).

The "purpose" of the guilt hearing is simple: "to determine whether sufficient evidence exists to support a finding that the respondent is guilty of the charged crime against him or her." KRS 202C.030(3). The Commonwealth Attorney "serving the county of criminal prosecution shall have the burden of

_____

[4] Given the precarious mental health of a KRS 202C respondent such that he or she was found to lack the ability to appreciate the nature and consequences of the criminal proceedings, it is difficult to determine how he or she would personally have the ability to understand the nature and consequences of the KRS 202C proceedings sufficiently enough to knowingly, voluntarily, and rationally waive **_any_** rights therein, including that to a guilt hearing. However, the parties have not sought relief based on that issue and so we decline to explore it further.

proving the sufficiency of the evidence by a preponderance of the evidence." *Id.* Juries are not permitted. KRS 202C.030(4).

It is undeniably peculiar at first blush for "guilt" to be determined without the possibility of a trial by jury and by application of the preponderance of the evidence standard. After all, our Supreme Court has noted that, in criminal cases, requiring sufficient proof "to allow **a reasonable jury to find guilt beyond a reasonable doubt** is one of the bedrocks of the American justice system and is one of the core protections of due process." *Commonwealth v. Goss*, 428 S.W.3d 619, 627 (Ky. 2014) (internal quotation marks and citation omitted) (emphasis added). Of course, though KRS 202C proceedings arise directly from criminal charges and are initiated and prosecuted by the Commonwealth Attorney's office, they are civil in nature (even though, as in a criminal trial, the respondent's liberty is ultimately at stake).[5] And the right to a jury trial is even deemed "sacred" under § 7 of our state constitution.[6]

---

[5] Of course, in the overwhelming majority of instances where the Commonwealth Attorney files a petition seeking commitment under KRS 202C, if not all such instances, the respondent will already have been indicted – meaning that a grand jury has already found probable cause of the respondent's guilt on the underlying charges.

[6] There are exceptions to even that sacred right. For example, "no jury trial is available" when the issues before the court are "essentially equitable[.]" *Daniels v. CDB Bell, LLC*, 300 S.W.3d 204, 210 (Ky. App. 2009).

There are no published appellate decisions addressing the merits of an appeal from a commitment order issued pursuant to KRS 202C. However, though it declined to address the merits of sundry constitutional challenges to KRS 202C in a case in which the appellant was seeking a writ, our Supreme Court stated that the lack of a right to a jury trial and usage of the preponderance of the evidence standard to determine guilt under KRS 202C presented "serious" constitutional concerns. *Bisig*, 655 S.W.3d at 132. *Accord M. L. S. v. Edwards*, No. 2022-SC-0365-MR, 2023 WL 4037565, at *2 (Ky. Jun. 15, 2023) (unpublished). We agree. However, because H.M. admits he did not properly preserve his constitutionality arguments, we similarly decline to address them on the merits.

At the guilt hearing, "[t]he respondent shall be permitted to present evidence and cross examine witnesses. The respondent may present evidence of affirmative defenses that could be raised at a criminal trial on the charged crime." KRS 202C.030(4). Insanity is such a defense. *See, e.g.*, *Wainscott v. Commonwealth*, 562 S.W.2d 628, 631 (Ky. 1978); *Biyad v. Commonwealth*, 392 S.W.3d 380, 382 (Ky. 2013).

The main issue raised by H.M. regarding the guilt hearing is that the trial court erred by rejecting his insanity defense. In fact, the question before the trial court at the guilt phase boiled down to whether H.M. is legally insane since

such a person is deemed not guilty of the charged offense(s). *Exantus v. Commonwealth*, 612 S.W.3d 871, 880 (Ky. 2020); KRS 504.120.

The Commonwealth argues it is "illogical for an insanity defense to be viable in a Chapter 202C proceeding." Perhaps it is illogical. It certainly is unusual, especially given the prohibition on empaneling a jury and the usage of the preponderance of the evidence standard. However, we are tasked solely with construing the statutes, not opining as to their wisdom. *Hallahan v. Mittlebeeler*, 373 S.W.2d 726, 727 (Ky. 1963). Because KRS 202C.030 focuses solely on making the trial court determine whether the respondent is "guilty," (as opposed to, say, requiring the court to only determine whether there is sufficient evidence showing that the respondent committed the underlying criminal act(s) for which he or she was charged), the General Assembly created a rubric which allows a KRS 202C respondent to raise an insanity defense because a person who is legally insane is perforce not guilty.

Here, both the Commonwealth and H.M. presented expert testimony at the guilt phase. Unsurprisingly, those experts disagreed about whether H.M. was insane. H.M. also presented lay testimony which described his peculiar behavior, and the Commonwealth presented evidence which left no doubt that H.M. killed his caretaker. Faced with that conflicting evidence, the trial court gave more credence to the Commonwealth's expert and found H.M. guilty. That finding

triggered the next phase, a commitment hearing.  Meanwhile, H.M. filed appeal No. 2022-CA-1016-MR, *H.M. v. Commonwealth of Kentucky*.

We pause here to discuss the prematurity of that appeal.  The order finding H.M. to be guilty did not conclude the KRS 202C proceedings; instead, that order only required the holding of another hearing, the commitment hearing.  Because the order finding H.M. guilty did not adjudicate "all the rights of all the parties" to the KRS 202C proceedings, it was not a final and appealable judgment under the plain language of Kentucky Rules of Civil Procedure (CR) 54.01.  And CR 54.02 cannot be applied to render the guilt order final and appealable because: a) the KRS 202C proceeding does not involve either multiple parties or multiple claims for relief; and b) the trial court (wisely) did not attempt to make the order adjudging H.M. guilty final and appealable.  Our conclusion aligns with our Supreme Court's statement that it "sees no reason why a final order demanding indefinite involuntary commitment could not itself be appealed." *Bisig*, 655 S.W.3d at 131.

Because appeal No. 2022-CA-1016-MR was taken from a nonfinal order, we are "compelled" to dismiss it since, other than limited exceptions not present here, we lack jurisdiction to consider the merits of appeals taken from nonfinal orders. *Energy and Environment Cabinet v. Concerned Citizens of Estill Cnty., Inc.*, 576 S.W.3d 173, 176 (Ky. App. 2019).

-10-

We are aware of a contrary decision made by a motion panel. In September 2022, then-Chief Judge Clayton issued a show cause order requiring H.M. to show why appeal No. 2022-CA-1016-MR should not be dismissed as having been taken from a nonfinal order. The show cause order explained in detail why it appeared the order finding H.M. guilty was not final and appealable. H.M.'s response expressed confusion about how to proceed in KRS 202C actions, but it did not explain how the guilt order was final and appealable. Nonetheless, a motion panel issued an order consolidating the three appeals and holding, without explanation, that H.M. had shown cause sufficient to prevent the dismissal of No. 2022-CA-1016-MR.

Upon reflection, and with this merits panel (unlike the motion panel) having had the ability to view the trial court record and the parties' merits briefs, we conclude then-Chief Judge Clayton's explanation in the show cause order as to why the guilt order was not final and appealable was correct. Though we strive for consistency as a Court despite sitting in ever-rotating three-judge panels, a merits panel may revisit a motion panel's nondispositive decisions. *See, e.g.*, *Bowlin Group, LLC v. Rebennack*, 626 S.W.3d 177, 181 (Ky. App. 2020). And dismissing appeal No. 2022-CA-1016-MR will cause H.M. to suffer no tangible prejudice since his other appeals will be resolved on the merits.

-11-

In sum, a KRS 202C respondent may only properly appeal from the order requiring him or her to be committed. Of course, that appeal may involve issues which arose in the guilt phase.

We now turn to the commitment hearing, which may not be waived and must be held expeditiously. KRS 202C.040(1), (5). Though the commitment hearing here was held in a courtroom, it may be held elsewhere and conducted informally under KRS 202C.040(2). However, it is unclear how informal the hearing may actually be since KRS 202C.040(4) provides that "[t]he manner of proceeding and the rules of evidence shall be the same as those in any criminal proceeding." And, though a party may demand usage of a jury during the commitment hearing under KRS 202C.040(4), it is unclear how, as a practical matter, a jury may be utilized in locations other than a courtroom.

At the commitment hearing, the Commonwealth Attorney bears the burden to show "beyond a reasonable doubt" that the respondent "meets the criteria for involuntary commitment under KRS 202C.050." KRS 202C.040(3)-(4). The four criteria listed in KRS 202C.050(1) are:

> (a) The respondent presents a danger to self or others as a result of his or her mental condition;

> (b) The respondent needs care, training, or treatment in order to mitigate or prevent substantial physical harm to self or others;

-12-

(c) The respondent has a demonstrated history of criminal behavior that has endangered or caused injury to others or has a substantial history of involuntary hospitalizations under KRS Chapter 202A or 202B prior to the commission of the charged crime; and

(d) A less restrictive alternative mode of treatment would endanger the safety of the respondent or others.

Since the General Assembly chose to insert the conjunctive word "and" between subsections (c) and (d), all four factors must be proven beyond a reasonable doubt. 1A *Sutherland Statutory Construction* § 21:14 (7th ed. 2023) ("Statutory phrases separated by the word 'and' are usually interpreted in the conjunctive.").[7]

After admitting without objection written reports submitted by experts and hearing testimony from the director of KCPC, the trial court held that all four factors had been satisfied and ordered H.M. to be committed at KCPC.[8] H.M. then filed appeals No. 2022-CA-1195-MR and No. 2022-CA-1196-MR, one from the

_____

[7] We do not perceive that this is among the unusual circumstances where we must "change 'and' to 'or,' and vice versa . . . to accomplish the purpose or object of the statute." *Duncan v. Wiseman Baking Co.*, 357 S.W.2d 694, 698 (Ky. 1961).

[8] The trial court memorialized in writing its decision by completing a form order prepared by the Administrative Office of the Courts (AOC), AOC-708.4. A blank version of that form may be viewed at https://www.kycourts.gov/Legal-Forms/Legal%20Forms/708.4.pdf (last visited Feb. 16, 2024). The form contains a blank space for the trial court to specify the facility to which a respondent will be committed. However, we do not perceive why it is mandatory for a trial court to designate which facility should house a person committed pursuant to KRS 202C since KRS 202C.050(2) explicitly gives the Secretary of the Cabinet for Health and Family Services the authority to designate where the committed individual will be housed.

-13-

original criminal case and one from the civil case opened upon the filing of the KRS 202C petition.

We do not fault H.M.'s counsel for filing both appeals, given the uncertainty involved with KRS 202C proceedings. For the benefit of the bench and bar, however, a KRS 202C respondent should appeal only from the civil case opened as a result of the filing of the KRS 202C petition. In other words, though the filing of criminal charges led to the KRS 202C petition being filed, the KRS 202C proceedings are not criminal in nature and ordering a person to be committed under KRS 202C has no tangible bearing on the resolution of the underlying criminal charges. Under these facts, we decline to dismiss the appeal taken in the underlying criminal case, but caution counsel that future appeals taken solely from the underlying criminal cases are improper and may be dismissed. Of course, the parties to a KRS 202C appeal may take steps to ensure that the appellate record is supplemented with any necessary matters found solely in the record of the criminal case under RAP 24 and 25.

Before we may address H.M.'s arguments on the merits, we must ascertain the standards governing our review. Since there are no prior appellate decisions addressing the merits of an appeal from an involuntary commitment order issued under KRS 202C, we write on a blank slate.

At root, appeals from involuntary commitment orders issued pursuant to KRS 202C will involve questions of whether there was sufficient evidence to find a respondent guilty in the first phase and to then find that the Commonwealth satisfied the four criteria for involuntarily commitment in the second phase. Our review here thus focuses on whether there is substantial evidence to support both of those decisions.

Our Supreme Court has determined in analogous circumstances that the propriety of a trial court's having found a defendant competent to stand trial depended on whether the competency ruling was supported by substantial evidence. *Harston v. Commonwealth*, 638 S.W.2d 700, 701 (Ky. 1982). And "where the ruling is based on substantial evidence there is no error." *Id.* at 702. "Substantial evidence is that evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable people." *Weinberg v. Gharai*, 338 S.W.3d 307, 312 (Ky. App. 2011). The trial court alone may judge witness credibility and weigh the evidence, *Herbener v. Herbener*, 587 S.W.3d 343, 352 (Ky. App. 2019), and "[a] fact-finder's choice between conflicting opinions of expert witnesses rarely can be held 'clearly erroneous.'" *Gatliff v. White*, 424 S.W.2d 843, 844 (Ky. 1968). *See also, e.g.*, CR 52.01 ("In all actions tried upon the facts without a jury . . . the court shall find the facts specifically and state separately its conclusions of law thereon and

render an appropriate judgment . . . . Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); *Tolley v. Commonwealth*, 892 S.W.2d 580, 584 (Ky. 1995) (declining to disturb a trial court's decision to forcibly medicate a person declared incompetent to stand trial and involuntarily committed because the trial court's decision was "consistent with the testimony and opinions of Dr. Jacobs and Dr. Turns, and thus its findings were supported by substantial evidence, and accordingly, under CR 52.01, could not be disturbed on appeal"). We review *de novo* the trial court's application of the facts to the relevant law. *Weinberg*, 338 S.W.3d at 312.

The gist of H.M.'s first argument is that the trial court erred by rejecting his insanity defense. As the trial court's decision was supported by substantial evidence, we must disagree.

Before we address the merits of that argument, we must resolve the Commonwealth's antecedent argument that H.M. failed to properly preserve this issue for our review because his counsel made a motion for a directed verdict instead of a motion to dismiss. We agree that "a directed verdict is clearly improper in an action tried by the court without a jury." *Brown v. Shelton*, 156 S.W.3d 319, 320 (Ky. App. 2004). Consequently, H.M.'s counsel should have moved for dismissal of the petition under CR 41.02, as H.M. admits. In relevant

-16-

part, CR 41.02(2) provides that "[i]n an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

Though they "fulfill[] the same mid-trial function[,]" *Morrison v. Trailmobile Trailers, Inc.*, 526 S.W.2d 822, 823 (Ky. 1975), the difference between a motion for a directed verdict and for dismissal under CR 41.02 is more than semantics. For example, when considering a motion to dismiss under CR 41.02, a trial court "must weigh and evaluate the evidence. The trial court does not, as in the case of a motion for a directed verdict, indulge every inference in the plaintiff's favor." *Id.* at 824.

We recognize the "essential fairness of appellate proceedings" is dependent upon the preservation requirement, which brings "order and efficiency" to the appellate process. *Gasaway v. Commonwealth*, 671 S.W.3d 298, 312 (Ky. 2023). Nonetheless, though H.M.'s motion was not made pursuant to the correct rule, it placed squarely before the trial court the basic issue of whether the Commonwealth had presented sufficient evidence to find H.M. guilty. The Commonwealth has not been ambushed on appeal by H.M.'s arguments, nor was it similarly unable to rebut H.M.'s sufficiency of the evidence arguments at the guilt

hearing.  In short, under these facts a rigid adherence to the preservation requirement would be the elevation of form over practical substance.

Our conclusion is buttressed by the inescapable fact that, albeit in a different type of proceeding, our Supreme Court has treated as preserved a matter requesting a directed verdict instead of dismissal under CR 41.02.  *See R.S. v. Commonwealth*, 423 S.W.3d 178, 184 (Ky. 2014).  Notably, the Court treated a separate, unrelated issue in that case as unpreserved.  *Id.* at 188.  As did our Supreme Court in *R.S.*, we will deem the issue as to whether H.M. was entitled to a dismissal of the KRS 202C petition due to a lack of evidence as having been sufficiently preserved for our review.  In any event, our resolution of this issue would not change if we analyzed it under the manifest injustice standard used to review unpreserved errors under CR 61.02.

"On appellate review of a ruling on a defendant's CR 41.02 motion, we will overturn the trial court only for an abuse of discretion.  An abuse of discretion will be found when the trial court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles."  *R.S.*, 423 S.W.3d at 184 (internal quotation marks, footnotes, and citations omitted).  In *R.S.*, as here, the appellate court's focus is on whether there was sufficient evidence to support the trial court's decision.  *Id.* at 184-88.  H.M.'s protestations to the contrary

notwithstanding, the Commonwealth presented evidence sufficient to support the trial court's decision.

As the Commonwealth colloquially deems it, the guilt hearing was largely a "battle of the experts[.]"  The Commonwealth presented the testimony of Dr. George Parker, a professor of psychiatry at Indiana University.  Dr. Parker testified that he had reviewed the evidence, crucially including videos recorded on or near the day of the killing, and had interviewed H.M.  Dr. Parker's ultimate conclusion was that H.M. was not insane because he appreciated the wrongfulness of his conduct and had the ability to conform to the requirements of the law.  For example, Dr. Parker cited H.M. having told officers at the scene that he was afraid he had killed someone and having acknowledged there are consequences for killing a person.  Dr. Parker also found it significant that H.M. expressed remorse soon after being arrested, told officers he would plead insanity, and eventually brought the interaction to a close by stating that he would "plead the Fifth."[9]

---

[9] H.M. strenuously argues that the trial court erred by relying at all on his invocation of his Fifth Amendment rights.  The United States Supreme Court has held that "it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony.  It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity." *Wainwright v. Greenfield*, 474 U.S. 284, 292, 106 S. Ct. 634, 639, 88 L. Ed. 2d 623 (1986).  Of course, *Wainwright* involved using a defendant's silence against him in a criminal proceeding and the parties have not cited binding Kentucky authority stating whether *Wainwright* applies to civil commitment proceedings.  In any event, though we question the propriety of the trial court's relying on H.M.'s invocation of his Fifth Amendment rights as proof of his sanity, we need not definitively opine on the matter because the trial court's conclusion was based on other unquestionably proper factors and observations.  In other words, even if we exclude the portion of Dr. Parker's opinion based on H.M.'s invocation of his Fifth Amendment rights, there was

After Dr. Parker testified, H.M. moved for a directed verdict (functionally, dismissal of the KRS 202C petition). The trial court denied the motion, and properly so. The Commonwealth had presented testimony from police officers which left no doubt that H.M. brutally killed his caretaker and Dr. Parker's testimony presented an adequate basis for the trial court to reject H.M.'s argument that he was insane; *i.e.*, to determine that H.M. was guilty.

For the same basic reasons, the trial court also did not err by refusing to dismiss the petition when H.M. renewed his motion at the close of all the evidence. In his case-in-chief, H.M. presented lay testimony detailing his irrational, peculiar behavior prior to killing his caretaker. H.M. also presented the testimony of two experts who had concluded H.M. was insane.

Dr. Amy Trivette, who previously was KCPC's medical director, testified that H.M. was one of only three patients in her career she had concluded was legally insane. Dr. Eric Drogin, a psychologist, testified essentially that he agreed with Dr. Trivette. However, Dr. Trivette could not recall if she had viewed

---

sufficient evidence to support the trial court's decision to reject H.M.'s insanity defense. Any error by the trial court in relying on H.M.'s invocation of his Fifth Amendment rights was harmless beyond a reasonable doubt because "in the context of the entire [proceeding]" H.M. has not shown that the evidence regarding his invocation of his Fifth Amendment rights "was of a weight, was of a striking enough nature, or played a prominent enough role in the Commonwealth's case to raise a reasonable possibility that it contributed to the conviction [*i.e.*, finding of guilt]." *Staples v. Commonwealth*, 454 S.W.3d 803, 826-27 (Ky. 2014).

the videos depicting H.M. soon after the incident and Dr. Drogin testified that he had not viewed all of them.

The question before the court was, at its core, which expert's opinion to accept and which to reject. After all, the court's choice was binary: H.M. either was legally insane or he was not, a matter about which the experts disagreed. The court chose to accept the testimony of Dr. Parker, placing significant weight on the fact that he alone viewed all of the video footage of H.M. near in time to the killing. Though H.M. disputes whether viewing that evidence was crucial or would have impacted Dr. Trivette's opinion, the trial court's conclusion is logical as that video evidence was the most contemporaneous evidence available of H.M.'s demeanor and mindset when he killed his caretaker. Even Dr. Trivette testified that she was unsure if watching the videos would have changed her conclusions but admitted such contemporaneous evidence can be helpful.

Though H.M. decries it, we cannot disturb the trial court's choice of how to evaluate the evidence and to adjudge the credibility of the witnesses, both lay and expert. It is a bedrock appellate principle that "[w]hen the evidence is conflicting, as here, we cannot and will not substitute our decision for the judgment of the [trial court]." *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967). The Commonwealth and H.M. both ably presented evidence to support their respective positions on H.M.'s sanity. A reasonable decisionmaker had available evidence

sufficient to accept or reject H.M.'s insanity defense. Under that state of relative evidentiary equipoise, we cannot disturb the trial court's decision to give more weight to Dr. Parker's opinion and to thus reject H.M.'s insanity defense.

We also must reject H.M.'s argument that the trial court declined to find him insane simply to avoid having to release him unconditionally. KRS 202C.030(6) provides that "[i]f the court determines that insufficient evidence has been presented to support a finding that the respondent is guilty of the charged crime against him or her, the court shall order the immediate release of the respondent." We will address only whether H.M. has adequately shown that the trial court's decision to reject his insanity defense was based on a desire to avoid releasing him. We shall not address H.M.'s arguments that KRS 202C.030(6) violated his constitutional rights because it offers a perverse incentive for trial courts to decline to find KRS 202C respondents insane because H.M. did not preserve his constitutional arguments for our review.[10]

We agree with H.M. that KRS 202C.030(6) is, frankly, bizarre. There is no obvious logical underpinning for requiring a trial court to release a person

---

[10] H.M. requests palpable error review of his constitutional arguments in his reply brief. But H.M. does not cite authority where a court engaged in such a palpable error review of the constitutionality of a statute. Moreover, "[w]hether to undertake palpable error review is within the sole discretion of the appellate court." *Brank v. Commonwealth*, 566 S.W.3d 560, 566 (Ky. App. 2018) (discussing the identical palpable error provisions of Kentucky Rule of Criminal Procedure (RCr) 10.26). Under these facts, we respectfully decline to conduct a palpable error review of the constitutionality of KRS 202C.

charged with a serious offense whom it has found to be incompetent to stand trial and legally insane. To the contrary, releasing such a person appears to be ***directly*** contrary to the safety and welfare of both that person and the public.

We have been pointed to no explanation as to why the General Assembly chose not to have KRS 202C emulate KRS 504.030, which requires a person found not guilty by reason of insanity at trial to be subjected to involuntary hospitalization proceedings held under KRS Chapters 202A or 202B. Perhaps the omission of similar language in KRS 202C was an accidental oversight. But the wisdom (or lack thereof) of KRS 202C.030(6) is not at issue. Instead, we must determine whether H.M. has shown that no trial court, including the one at hand, would find a KRS 202C respondent to be insane because doing so would require that person to be released. H.M. has not made that showing.

First, H.M. has not shown where he raised this precise argument to the trial court. He would thus be entitled to relief only upon a showing of manifest injustice. Nonetheless, we would reject H.M.'s argument even if it were preserved.

Second, he has offered nothing besides conjecture to support his argument. "[R]ecitals of the elements of a legal theory, supported by mere conclusory statements, form an insufficient basis upon which this Court can grant relief." *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018). *Accord Schell v. Young*, 640 S.W.3d 24, 32 (Ky. App. 2021).

-23-

Third, we have the utmost confidence that the dedicated trial judges across this Commonwealth will faithfully apply KRS 202C.030(6), even though they (like we) may strongly question its wisdom. Indeed, judges are required to do just that. *See, e.g.*, Kentucky Rule of the Supreme Court (SCR) 4.300, Canon 1.1 ("A judge shall comply with the law[.]"); SCR 4.300, Canon 2.2 ("A judge shall uphold and apply the law . . . ."); *Id.* at Comment 2 ("Although each judge comes to the bench with a unique background and personal philosophy, a judge must interpret and apply the law without regard to whether the judge approves or disapproves of the law in question."); *JPMorgan Chase Bank, N.A. v. Bluegrass Powerboats*, 424 S.W.3d 902, 909 (Ky. 2014) ("There is an expectation that trial courts will apply the correct law to matters before it."). H.M. has raised legitimate concerns about the wisdom of KRS 202C.030(6), but he has not satisfied his steep burden to show that the trial court here rejected his insanity defense to avoid having to comply with that peculiar subsection.

H.M.'s final argument is that the Commonwealth failed to prove beyond a reasonable doubt the four involuntary commitment factors listed in KRS 202C.050(1). We disagree.

There is no dispute that the Commonwealth satisfied the first two factors, which required it to show that H.M. presented a danger to himself or others as a result of his mental condition and that he needs care or treatment to help

-24-

prevent substantial harm to himself or others.  The issue is whether the Commonwealth satisfied the final two factors, which required it to show that H.M. "has a demonstrated history of criminal behavior that has endangered or caused injury to others or has a substantial history of involuntary hospitalizations under KRS Chapter 202A or 202B prior to the commission of the charged crime" and "[a] less restrictive alternative mode of treatment would endanger the safety of [H.M.] or others."  KRS 202C.050(1)(c)-(d).

We begin by noting that it is undisputed that H.M. did not have a substantial history of involuntary hospitalizations under KRS Chapters 202A or 202B.  H.M. apparently had been hospitalized in Alabama, where he formerly resided, but those hospitalizations cannot satisfy KRS 202C.050(1)(c) because they were not ordered pursuant to KRS 202A or 202B.

We turn to whether the Commonwealth showed H.M. had a demonstrated history of criminal behavior that endangered or caused injury to others.  The term *demonstrated history of criminal behavior* is not defined within KRS 202C.  The Commonwealth points to no judgments of convictions showing H.M. had been previously convicted of offenses endangering or causing injury to others.  So, the question becomes whether the statute requires the respondent to have previous convictions.  We conclude it does not.  Our analysis does not track precisely that utilized by the trial court, but our Supreme Court has commanded us

-25-

to affirm on any alternate grounds supported by the record. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014).

We must interpret the words in statutes according to their plain, everyday meaning unless they "have acquired a peculiar and appropriate meaning in the law[.]" KRS 446.080(4). We cannot "add or subtract from the language used in a statute[,]" *Commonwealth, Department of Revenue, Finance and Administration Cabinet v. McDonald*, 304 S.W.3d 62, 65 (Ky. App. 2009), and must "presume every word within a statute to have some meaning." *Travelers Indemnity Company v. Armstrong*, 565 S.W.3d 550, 563 (Ky. 2018).

*History* does not have a technical and specialized meaning under the law. In common parlance, as it pertains here, *history* means "an established record[.]" *History*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/history (last visited Feb. 19, 2024).

We disagree with the Commonwealth that committing the offense which resulted in the criminal charges that ultimately gave rise to the KRS 202C proceedings suffices. If a finding of guilt in the prior stage of the KRS 202C proceedings is sufficient to show a demonstrated history of criminal behavior, that statutory requirement is essentially superfluous. After all, the only way that a commitment hearing may occur is if the trial court has previously found that the respondent was guilty in the first phase. And the vast majority of the serious

charged offenses necessary to qualify a person to be the respondent of a KRS 202C petition involve violence or endangerment of others. In short, if we adopt the Commonwealth's theory, nearly every KRS 202C respondent will have a sufficient history of criminal behavior. We decline to construe the statute to render a portion of it functionally meaningless. Thus, a finding that a KRS 202C respondent is guilty in the prior phase of the KRS 202C proceedings is insufficient, standing alone, to show that the respondent has a demonstrated history of criminal behavior.

We also reject any argument by H.M. that the Commonwealth is required to show that he, or any KRS 202C respondent, has been convicted of criminal offenses which endangered or injured others. The General Assembly did not require a criminal *conviction* in KRS 202C.050(1)(c); instead, it only required the Commonwealth to prove beyond a reasonable doubt that the respondent had a demonstrated history of criminal *behavior*. "This Court interprets our statutes, it cannot rewrite them." *Farley v. P&P Construction, Inc.*, 677 S.W.3d 415, 423 (Ky. 2023). Word choices matter. If the General Assembly intended to require a criminal conviction, it would have so stated because *behavior* is not a synonym for *conviction*. The General Assembly knows the difference between the terms because it has enacted statutes which expressly require an act to be based upon a conviction. For example, KRS 532.055(2)(a)1. provides that the Commonwealth

may present in a sentencing hearing evidence of "prior convictions of the defendant, both felony and misdemeanor[.]"

The term *criminal behavior* has acquired a specific meaning in the law.  Namely, *criminal behavior* is defined as "[c]onduct that causes social harm and is defined and punished by law. – Also termed *criminal conduct.*"  *Criminal behavior*, BLACK'S LAW DICTIONARY (11th ed. 2019).  The requirement thus is for the Commonwealth to prove beyond a reasonable doubt that the KRS 202C respondent has a demonstrated history of engaging in criminal conduct, meaning conduct which causes social harm and is punishable by law.  Notably, a person may have a history of engaging in criminal conduct which did not lead to criminal convictions since not all criminal conduct leads to a criminal conviction.

Here, the Commonwealth presented unrebutted testimony that while in Alabama, H.M. had shot at least one arrow toward another person and had set afire at least one lawn.  Although it appears as if that misconduct did not result in criminal charges, it undoubtedly involved criminal acts which endangered others.

The term *demonstrated* does not have a specialized meaning in the law.  In common parlance, it is defined simply as "to show clearly" or "to prove or make clear by reasoning or evidence[.]"  *Demonstrated*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/demonstrated (last visited Feb. 21, 2024).  There is no set requirement in the statute for how many qualifying prior

criminal acts are necessary to demonstrate a *demonstrated* history of criminal behavior. However, we are convinced that the two aforementioned criminal acts H.M. committed in Alabama are sufficient to "show clearly" that H.M. had a *demonstrated* history of criminal behavior. Because it is not before us, we express no opinion on whether only one prior qualifying criminal act would be sufficient to constitute a *demonstrated history of criminal behavior*.

Synthesizing all of those principles, the Commonwealth is not required to show that a KRS 202C respondent has been convicted of criminal offenses which endangered or injured others to satisfy KRS 202C.050(1)(c). However, standing alone, the conduct for which the trial court found the respondent guilty in the first phase of the KRS 202C proceedings is insufficient to satisfy KRS 202C.050(1)(c). Instead, the Commonwealth must present evidence that the respondent engaged in criminal misconduct which injured or endangered others over and above that which led to the charges from which the KRS 202C petition sprang. Here, the Commonwealth presented sufficient evidence to show H.M. had a *demonstrated history of criminal behavior*.[11]

---

[11] Because the issue has not been squarely placed before us, we express no opinion as to whether the rights of a KRS 202C respondent would be violated by being involuntarily committed based in part on past criminal conduct for which he or she was neither charged nor convicted.

Finally, we must address H.M.'s argument that committing him to KCPC was wrong because less restrictive means were available and proper. In other words, H.M. argues the Commonwealth failed to show that "a less restrictive alternative mode of treatment would endanger the safety of the respondent or others." KRS 202C.050(1)(d). A *less restrictive alternative mode of treatment* is defined as "treatment given outside of a forensic psychiatric facility which would provide a respondent with appropriate treatment or care consistent with accepted professional practice standards and protect the respondent's safety and the safety of others[.]" KRS 202C.010(9). We disagree with H.M.

The gist of H.M.'s argument is that KCPC is a *de facto* prison as it is located within the grounds of the Luther Luckett Correctional Complex and the nurse's station for its residents is separated from the residents by locked doors. However, the director of KCPC gave unrebutted testimony that KCPC is the only facility which currently has adequate security to house a person such as H.M. who is committed pursuant to KRS 202C. Indeed, the director testified that KCPC houses some other persons committed under KRS 202C. Plus, two qualified mental health professionals submitted reports opining that the four involuntary commitment factors in KRS 202C.050 had been satisfied.

H.M. cites no precedent in this section of his brief explaining how his rights are violated by being committed to KCPC instead of a regional mental health

hospital. And, as the Commonwealth aptly notes in its brief, KRS 202C.050(1)(d) requires individuals to be housed in a facility which provides adequate care and offers adequate protection for the safety of the respondent and others. Other facilities may, arguably, have better professional treatment options, but KCPC's director testified that regional mental health facilities do not have the same level of security as does KCPC. And it is uncontested that H.M. brutally killed his caretaker and also has a history of violent criminal behavior in Alabama, so security issues are paramount when considering where best to house him. In short, regardless of what standard of review we utilize, the combination of H.M.'s violent history and the seemingly unanimous opinion of the experts here that KCPC is the appropriate facility in Kentucky for someone committed under KRS 202C means we must affirm the trial court's conclusion that the Commonwealth had proven beyond a reasonable doubt that "[a] less restrictive alternative mode of treatment would endanger the safety of [H.M.] or others." KRS 202C.050(1)(d).

We conclude by expressing our appreciation for the dedication shown by the Commonwealth, H.M.'s defense counsel, H.M.'s guardian *ad litem*, and the trial court. The proceedings were thorough, and counsel and the court demonstrated commendable dignity, professionalism, patience, collegiality, and dedication commensurate with the grave nature of a KRS 202C petition.

For the foregoing reasons, appeal No. 2022-CA-1016-MR is dismissed.  The Scott Circuit Court is affirmed as to appeals No. 2022-CA-1195-MR and No. 2022-CA-1196-MR.

ALL CONCUR.

ENTERED: Mar. 15, 2024

_____
JUDGE, COURT OF APPEALS


BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Harrison Gray Kilgore
Assistant Solicitor General
Frankfort, Kentucky