**KENTUCKY BAR ASSOCIATION,**
Complainant,

v.

**Duane L. VINCENT, Respondent.**

Supreme Court of Kentucky.

May 28, 1976.

Leslie G. Whitmer, Director, Ky. Bar Ass'n, John T. Damron, Asst. Director, Ky. Bar Ass'n, Frankfort, Frank Trusty, II, Covington, for complainant.

Louis DeFalaise, Adams, Brooking, Stepner & Mitchell, Covington, for respondent.

PER CURIAM.

This is a disciplinary proceeding initiated on December 10, 1973, by the Inquiry Tribunal of the Kentucky Bar Association against a member of the bar for allegedly unprofessional conduct as specified in three counts. After a hearing the Trial Committee of the Association recommended dismissal of Counts 1 and 2 and a private reprimand on Count 3. By a unanimous vote the Board of Governors of the Association found the respondent guilty on all counts, and by a vote of 10–1 it recommended that he be suspended from the practice of law for a period of 30 days.

The gist of the charges and pertinent evidence is as follows:

*Count 1.* In April of 1969 one Betty Jane Lawrence engaged the respondent to obtain a divorce for her. He filed her complaint and a reply to the husband's counterclaim. In response to her inquiries as to the status of the matter he directed her to bring a residency witness and come to his office for the purpose of giving their depositions. When Mrs. Lawrence and her witness, Joyce Turner, came to his office he was not there, but his secretary proceeded to take the depositions in his absence. Opposing counsel was not present. Subsequently Mrs. Lawrence made repeated inquiries about the status of the case and was told by the respondent that everything had been filed and all that needed to be done was for the judge to read the record and sign the judgment. Actually, as Mrs. Lawrence finally ascertained from the court clerk, no depositions had been filed and no further steps had been taken after filing of the reply. Mrs. Lawrence discharged the respondent and employed another lawyer to complete the case. Respondent refunded $75 of the $100 deposit Mrs. Lawrence had given him.

The most serious aspect of this charge centers on the alleged deposition. The respondent testified that he took the deposition himself and denied categorically that it had been taken by his secretary. At some time after the commencement of this disciplinary proceeding the deposition was discovered in his files, and he introduced it with his testimony. He explained that his reason for not filing it in the divorce suit was that Mrs. Lawrence had decided to discontinue the action. The deposition shows that it was taken before and certified by Cynthia Carol Martin, a notary public, that the defendant had been served and had failed to answer or enter any other pleading (this being in error, of course), and that the plaintiff was present in person and by counsel, the respondent.

Respondent explained the misstatements made by the notary on the face of the deposition as probably having resulted from her inexperience. She was his secretary and had worked in a law office for only four or five months. He speculated that she may have copied the certification from some other similar document in his office. Her deposition finally was taken on April 22, 1976, but her testimony proved to be so vague that it had virtually no probative value one way or another.

The evidence supporting Count 1 is persuasive, but a finding that the respondent was not present when the Lawrence deposition was taken would be tantamount to finding that he has committed perjury in this proceeding. Considering the conflicting testimony on this point, we are disposed to give the respondent the benefit of the doubt, and on Count 1 find him guilty of no more than neglect in the conduct of his client's business.

*Count 2.* In April of 1968 Mr. and Mrs. Otis Beams consulted with the respondent with a view toward bringing suit for damages occasioned by leaks in the basement of their home. On May 3, 1968, they paid him $100 by check. According to the Beams, he agreed to file the suit and later advised them that he had done so, first saying that

it had been filed in the Boone Circuit Court, then that it had been filed in the Kenton Circuit Court, and finally that it had been filed in the federal court at Lexington. The Beams got in touch, successively, with the respective clerks of these three courts and learned that no such action was pending. Eventually they retained another attorney to bring the action. The respondent refunded their $100. His version of the matter was that upon investigation he determined that the prospective defendant was judgment-proof, that he so advised the Beams, and that he never told them a suit had been filed. On this count we are disposed to agree with the Board of Governors that the respondent is guilty, which means that he not only neglected the business of his clients but lied to them as well.

*Count 3.* In May of 1970 Creed K. Boatright, Jr., of Alexandria, Virginia, employed the respondent to file a foreclosure suit against Sidney DeWitt Williams and wife, the purchasers of a home he and his former wife had conveyed or agreed to convey to them, and paid him $200 by check. On July 27, 1970, in reply to an inquiry from Boatright, the respondent advised him by letter that "your cause of action against Mr. and Mrs. Williams is proceeding in our Boone Circuit Court and that said case will probably be tried in the Boone Circuit Court in December of 1970." The next correspondence was a letter from Boatright on January 25, 1971, asking for a progress report, to which the respondent evidently did not reply. On March 8, 1971, Alphonse J. Audet, Jr., an attorney of Alexandria, Virginia, advised the respondent by letter that Boatright had retained him to ascertain the status of *Boatright vs. Williams* and asked several questions, including when the case was set for trial, whether any payments were being made under the contract and, if so, whether the acceptance of such payments would constitute a waiver. In a reply dated April 5, 1971, the respondent advised Mr. Audet that the Williamses were not delinquent in any of their payments to the savings and loan association (which apparently was acting as collection agent), that there had been no waiver, and that Mr.

Williams was negotiating for a loan to pay Boatright. In this letter the respondent further advised Mr. Audet as follows:

"A complaint has been filed in the Boone Circuit Court and an Answer has been filed by Mr. Williams, however, it is my opinion that if Mr. Williams does obtain the loan and pays Mr. Boatright, then the complaint would be dropped."

Some 19 months later, in November of 1972, Mr. Audet obtained from the Boone Circuit Clerk a statement that she had checked her records and could not find an action styled *Boatright v. Williams*. Boatright thereupon discharged the respondent and directed him to relinquish the file to another attorney.

To Count 3 the respondent had no defense except "human error", in explanation of which he said that Boatright is an unusual name in the area, there being but one other, and that by coincidence he had a case involving the other Boatright, which he confused with the Creed Boatright matter. He did not, however, produce any evidence to show the nature or similarity of the other Boatright case. Frankly, we can well understand why even the Trial Committee, in its superabundant lenience, could not swallow that one. We do not believe and therefore cannot accept as a fact that on two separate occasions, once in the letter of July 27, 1970, and again in the letter of April 5, 1971, the respondent thought he was referring to another case. Again we cannot avoid the conclusion that he not only neglected his client's business but deliberately lied to him as well.

The sum of our findings on the three counts against respondent is that he is guilty of unprofessional conduct calculated to bring the bench and bar into disrepute. Cf. RAP 3.130.

■ Citing the fact that Count 2 arose out of conduct occurring more than five years before the formal charges were filed in this proceeding, respondent invokes the statute of limitations, KRS 413.120(2). Though KRS 30.170(1)(a) and (b) direct this court to prescribe a code of ethics and to

establish practice and procedure for disciplining, suspending and disbarring attorneys, the power of the court to do so does not depend upon the statute, but is inherently a judicial function, without which courts of justice could scarcely survive. If it were a matter of legislative dispensation the General Assembly could not constitutionally delegate it to another branch of government. Const. § 28. Hence KRS 30.-170(1)(a) and (b) can have no more than a hortatory effect, this is not a proceeding on "a liability created by statute," and KRS 413.120(2) does not apply. Nor do we think that there was such an unreasonable delay in bringing the matter to the point of formal charges that the equitable doctrine of laches should be applied.

In its report and recommendations filed pursuant to RAP 3.360 the Trial Committee expressed concern that some of the charges had been "agitated and solicited" by unnamed members of the Boone County bar, commenting as follows: "The legal profession is perhaps the only one in the world which disciplines itself by proceedings similar to this. Solicitation of complaints . . . from citizens by attorneys against a fellow attorney is a reflection upon the profession as a whole. The Trial Committee is of the opinion Complainant's staff was aware of this situation and, to a certain extent, participated in it."

Obviously, and of course, no complaint against anyone, lawyer or nonlawyer, should be fanned by winds of jealousy or other evil motive. But it occurs to us that the good name of the profession suffers not so much from the barratrous activities of its members against each other as it does from their well-known reluctance to incur the personal animosity that results from doing what they ought to do when the professional misconduct of fellow-lawyers is brought to their attention. The law is an honorable profession. Those who are called to it should be men and women of honor. Men and women of honor should be able to live comfortably under the honor system. Though our rules and canons do not impose that system, in the sense that one who knows must report or be in violation himself, certainly they partake sufficiently of its spirit that lawyers are morally bound, if they would police their own profession, to see to it that the plain misconduct of other lawyers is not tolerated.

 Our conclusion is that the respondent should be and he is suspended from the practice of law in the courts of this Commonwealth for a period of 12 months. To the extent that this period overlaps a similar suspension heretofore imposed in a separate proceeding against the respondent they shall run concurrently.

All concur.