RENDERED:  MARCH 21, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0630-MR

EXECUTIVE BRANCH
ETHICS COMMISSION                                                    APPELLANT


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE PHILLIP J. SHEPHERD, JUDGE
                    ACTION NO. 23-CI-00544


ALISON LUNDERGAN GRIMES                                              APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  The Executive Branch Ethics Commission ("Commission")

fined former Kentucky Secretary of State Alison Lundergan Grimes ("Secretary

Grimes") for ethical violations.  The Franklin Circuit Court reversed the

Commission's decision, finding it was arbitrary, not supported by substantial

evidence, and time barred.  Due to the statute of limitations alone, we affirm.

# BACKGROUND

The State Board of Elections ("State Board") administers the election laws of the state and safeguards voter information within Kentucky's Voter Registration System. Kentucky Revised Statute ("KRS") 117.015(1) and KRS 117.025. This Voter Registration System includes a "complete roster of all qualified registered voters within the state by county and precinct[,]" and is maintained by the State Board. KRS 117.025(3)(a); 31 Kentucky Administrative Regulation ("KAR") 3:010, § 1(10).

Secretary Grimes was elected to serve two terms as Kentucky's Secretary of State, and she held the office from January 2012 through January 2020. As Secretary of State, Secretary Grimes was the chief election official for the Commonwealth, and the chair of the State Board. *See* KRS 117.015(2)(a). In her official capacity, she was authorized to have "electronic access to the information contained within the [Voter Registration System.]" KRS 117.025(3)(a). However, state and local election officials – including the Secretary of State, State Board, and their staff – are only permitted to use voter registration information for purposes relevant to their official duties. *Id.*

On May 18, 2017, former State Board Assistant Director, Matt Selph ("A.D. Selph"), made a formal complaint notifying the Commission of actions by

Secretary Grimes that he perceived to be ethical violations.[1] Secretary Grimes characterized his complaints as disagreements over internal office policies and management styles due, in part, to A.D. Selph's mistaken belief that Secretary Grimes should not have been permitted electronic access to the Voter Registration System.

In July 2017, the Commission initiated a preliminary investigation into whether Secretary Grimes violated the Executive Branch Code of Ethics ("Ethics Code"), codified in KRS Chapter 11A, by allegedly improperly requesting, accessing, and/or transferring voter registration lists (compiled from the Voter Registration System) without following proper procedures and/or for purposes beyond her official duties.

On November 18, 2021, the Commission commenced the underlying proceeding with its "Initiating Order and Formal Complaint" containing two broadly worded counts. Count I alleged Secretary Grimes improperly used her position to direct subordinates to use state time and resources to download and store Voter Registration System data onto flash drives for a "personal, private purpose" without following the required procedure in violation of KRS 11A.005,

---

[1] In 2017 or 2018, another employee of the State Board also made similar complaints to the Attorney General's office which resulted in a simultaneous criminal investigation. The circuit court in this action later took judicial notice of that criminal investigation and charged the Commission with knowledge of that investigation because the Commission's chief legal counsel was also part of the criminal probe. The criminal investigation terminated around July 2021 without any criminal charges against Secretary Grimes or anyone else.

-3-

KRS 11A.020(1)(a), (c), and (d), and KRS 11A.020(2). Count II alleged that prior to the November 2016 election, Secretary Grimes used her position to direct subordinates to use state time and resources to engage in political activities by sharing voter registration data with democratic candidates at no cost and in a format "not provided by law." The Commission asserted that the recipient candidates needed to pay a fee for this information, and the Secretary's actions constituted a violation of KRS 11A.005 and KRS 11A.020(1)(a) and (d). Secretary Grimes contested both counts.

In December 2022, Secretary Grimes moved for summary judgment before the Commission's hearing officer, claiming the action was time barred, and the Commission failed to produce clear and convincing evidence that she knowingly violated the Ethics Code or any other state statute or regulation. Specifically relating to Count I, Secretary Grimes noted five instances – between January 2015 and November 8, 2016 – when her Assistant Secretary of State asked a contract computer programmer to transfer portions of Voter Registration System data onto flash drives (and to organize the data in a user-friendly format). Secretary Grimes denied that she improperly requested, accessed, compiled, transferred, or distributed this Voter Registration System data.

Specifically relating to Count II, Secretary Grimes admitted to five instances where a Speaker of the House staff member requested and received lists

from her office of newly registered democratic voters in certain House districts. Secretary Grimes asserted these communications and transfers were not improper and were consistent with customary practices. In response to Secretary Grimes' motion, the Commission cross-motioned for summary judgment relying solely on those facts presented by Secretary Grimes. The Commission stated, "[u]sing the facts relied upon by [Secretary Grimes] in her motion provides the basis to show by clear and convincing evidence that she violated the [Ethics Code]." As the parties were relying upon the same, uncontested facts for their motions, the Commission did not hold an evidentiary hearing.

In February 2023, the Commission's hearing officer dismissed the alleged violations of KRS 11A.020(1)(c) and KRS 11A.020(2), but concluded Secretary Grimes violated KRS 11A.020(1)(a) and (d) and recommended a total penalty of $5,000. In May 2023, the Commission adopted the hearing officer's conclusions in total, with the exception of the officer's recommended penalty. The Commission's final order similarly concluded Secretary Grimes violated KRS 11A.020(1)(a) and (d), but recommended a $10,000 fine. Secretary Grimes appealed to the Franklin Circuit Court.

In April 2024, after briefings and oral arguments, the circuit court reversed the Commission's Final Order on strictly legal grounds holding: (1) the administrative complaint was filed outside the applicable statute of limitations set

forth in KRS 413.120; and (2) the Commission's findings that Secretary Grimes committed violations expressed in each count were arbitrary and without support of substantial evidence. The Commission moved for discretionary review.

## ANALYSIS

The Commission challenges numerous substantive findings by the circuit court, but as the application of KRS 413.270 is determinative in this case (and the operative facts concerning the time elements are not in dispute), we limit our analysis to that dispositive issue alone. *See Smith v. Fletcher*, 613 S.W.3d 18, 24 (Ky. 2020). "Therefore, our review is of a question of law, and we review questions of law *de novo*." *Id*. (citing *Cmty. Fin. Servs. Bank v. Stamper*, 586 S.W.3d 737, 741 (Ky. 2019)).

### A. The statute of limitations within KRS 413.120(2) applies to prosecution of ethical violations within KRS 11A.020.

With statutory interpretation matters such as this, our role is to "ascertain and give effect to the General Assembly's intent." *See Kentucky Bd. of Med. Licensure v. Strauss*, 558 S.W.3d 443, 448 (Ky. 2018) (citation omitted). To do so, we must presume the "plain meaning of the statutory language is . . . what the legislature intended[.]" *Revenue Cabinet v. O'Daniel*, 153 S.W.3d 815, 819 (Ky. 2005) (citation omitted). "It is fundamental that administrative agencies are creatures of statute and must find within the statute warrant for the exercise of any

authority which they claim." *Dep't for Nat. Res. & Env't Prot. v. Stearns Coal & Lumber Co.*, 563 S.W.2d 471, 473 (Ky. 1978).

KRS 413.120(2) states that actions shall be commenced within five years after the cause of action accrued "upon a liability created by statute, when no other time is fixed by the statute creating the liability." KRS 11A.020(1) prohibits public servants from knowingly using or attempting to use his/her influence "in any matter which involves a substantial conflict between [her] personal or private interest and duties in the public interest[,]" or "to secure or create privileges, exemptions, advantages, or treatment for [herself] or others in derogation of the public interest at large." KRS 11A.020(1)(a) and (d). The Commission determined that Secretary Grimes violated KRS 11A.020(1)(a) and (d). KRS Chapter 11A – specifically, KRS 11A.990, the penalty section of the Ethics Code – does not include a statute of limitations for prosecutions of KRS 11A.020 ethical violations.

Thus, here, the KRS 413.120(2) five-year time limit applies because liability was created by statute and no other time is fixed by the statute creating that liability. However, despite the clear, plain language of KRS 413.120(2), the Commission argues the application of this statute is not appropriate.

The penalty section of the Ethics Code (KRS 11A.990) sets a four-year time constraint on prosecution for violations of KRS 11A.040 (the criminal

counterpart to KRS 11A.020). There is no penalty section and/or statute of limitations within KRS Chapter 11A for violations of KRS 11A.020, the ethical violation statute in question here. The Commission asserts that this absence of constraints for KRS 11A.020 was intentional. We agree that the absence was intentional, but we do not agree with the Commission as to the implication of that absence.

The Commission asserts that the absence of a statute of limitations within KRS Chapter 11A for ethical violations under KRS 11A.020 means the General Assembly did not intend for *any* prosecutorial time constraints to be placed on such violations. Yet, that reading of the KRS would require us to read words into the statute that do not exist, an assumption we are not permitted. We must "ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed." *Revenue Cabinet*, 153 S.W.3d at 819 (quoting *Flying J Travel Plaza v. Commonwealth of Kentucky, Transp. Cabinet, Dep't of Highways*, 928 S.W.2d 344, 347 (Ky. 1996)) (internal quotation marks omitted).

Long before the enactment of KRS Chapter 11A, the General Assembly enacted KRS 413.120(2). KRS 413.120(2) clearly states that "when no time is fixed by the statute creating the liability[,]" then the action must commence within five years. If the General Assembly intended otherwise – *i.e.*, intended a

specific (or unlimited) prosecution timeframe for KRS 11A.020 – then it would have expressed that intention clearly, as it did with KRS 11A.040. *See also by example* KRS 500.050(1).

Additionally, the Commission asserts that precedent prevents us from applying KRS 413.120 to all disciplinary actions rooted in ethical violations and points us to *Kentucky Bar Association v. Signer*, 558 S.W.2d 582 (Ky. 1977). In *Signer*, an attorney ("Signer") was disbarred in Ohio, thus calling into question his Kentucky law license. *Id*. at 582. The Kentucky Bar Association had no information of the Ohio disciplinary proceeding when Signer was admitted in Kentucky. *Id*. Eventually, the Kentucky Bar Association charged Signer with unethical and unprofessional conduct, and the Board of Governors recommended disbarment in Kentucky. *Id*. at 583. On appeal, Signer argued, in part, that the disciplinary action against him was barred by the statute of limitations set out in KRS 413.120. *Id*. at 583. Ultimately, our Supreme Court noted that the statute of limitations did not bar the initiation of his disciplinary proceedings. *Id*. at 583-84.

However, *Signer* is distinct from the matter before us. *Signer* dealt with ethical violations of Supreme Court Rule ("SCR") 3.130, the Kentucky Rules of Professional Conduct. KRS 413.120 specifically and expressly applies to actions created by *statute* (enacted by the General Assembly) and does not speak to discipline created by the Supreme Court and SCR 3.130. The fact that the *Signer*

Court did not apply KRS 413.120 to ethical violations of Supreme Court rules is not dispositive here. The power of our Supreme Court to prescribe ethical rules and procedures for discipline of attorneys does not depend on statute but is inherently a judicial function. *Kentucky Bar Ass'n v. Vincent*, 538 S.W.2d 39, 42 (Ky. 1976).

Next, the Commission argues – citing *Commonwealth of Kentucky, Natural Resources & Environmental Protection Cabinet v. Kentucky Insurance Guaranty Association*, 972 S.W.2d 276 (Ky. App. 1997) (*KIGA*) – that the KRS 413.120 "catchall" statute of limitations only applies to administrative proceedings if the action constitutes a replacement or counterpart of a pre-existing common law action. The Commission argues that "as [e]thics prosecutions under Chapter 11A have no common law counterpart, there is no analogy available to ethics violations of KRS 11A.020 to KRS 413.120," and therefore KRS 413 is not applicable to actions commenced by the Commission. However, the Commission misconstrues *KIGA*. The *KIGA* Court did *not* hold that the statute of limitations within KRS 413 *only* applies to administrative actions with a common law counterpart. Rather, *KIGA* explained that while "not literally applicable," the statute of limitation period within KRS 413 could apply to certain administrative agencies *by analogy*.[2]

---

[2] "Courts in numerous jurisdictions, including Kentucky, when confronted with administrative boards conducting quasi-judicial proceedings but operating without any express limitations

-10-

*Id.* at 281. The *KIGA* Court intended to discourage the "absurd result" of an administrative agency commencing a proceeding that would otherwise be barred by the statute of limitations in "every other tribunal of the Commonwealth." *Id.* at 280. *KIGA* merely promoted consistency in the application of restrictive timeframes for both common law civil actions and their quasi-judicial administrative counterparts.

To be clear, *KIGA* did not extend the reach of *all* statutes of limitation to *all* quasi-judicial tribunals.[3] *Id.* at 280. Also, we accept there is no common law civil counterpart to the ethics violations in question here. Nonetheless, *KIGA* is helpful for understanding the need for a consistent statute of limitations approach across the courts and quasi-judicial administrative actions.

> Statutes of limitation in general are designed to bar stale claims arising out of transactions or occurrences which took place in the distant past. *Armstrong v. Logsdon*, []469 S.W.2d 342 ([Ky.] 1971). They close the doors of the courts and are expressly intended "to be used as a blanket to smother the moribund claims" of plaintiffs and defendants. *Liter v. Hoagland*, [] 204 S.W.2d 219, 220 ([Ky.] 1947). The legislative preference for prompt resolution of claims which underlies all statutes of limitation is equally compelling whether the forum is a court or a quasi-judicial tribunal.

---

period in the enabling statute have applied by analogy the statute of limitation applicable to the common law predecessor to, or counterpart of, the administrative action." 972 S.W.2d at 281.

[3] More specifically, *KIGA* referred to the extended definition of "court" in Kentucky's Saving Statute, KRS 413.270, as defined by "all courts, commissions, and boards which are judicial or quasi-judicial tribunals authorized by the Constitution or statutes of the Commonwealth of Kentucky or of the United States of America." 972 S.W.2d at 280 (emphasis omitted).

-11-

*Id*. at 280-81.

In that vein, we believe – even if we did not find KRS 413 directly applicable – Secretary Grimes has a strong argument that the limits within KRS 413 should apply to the Commission's actions due, in part, to its quasi-judicial nature. "Quasi-judicial" proceedings include actions "of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and exercise discretion of a judicial nature." *Bolden v. City of Covington*, 803 S.W.2d 577, 581 (Ky. 1991) (quoting BLACK'S LAW DICTIONARY, Sixth Edition (1990)). Quasi-judicial authority is "[t]he power . . . to adjudicate the rights of persons before it." *Id*.

The Commission operates as a quasi-judicial tribunal. The Commission has the authority to conduct a preliminary investigation after receiving a complaint signed under penalty of perjury. KRS 11A.080(1)(a). During the investigation, the Commission may issue subpoenas to compel witnesses or the production of evidence, and failure to obey a Commission subpoena may be punished as contempt. KRS 11A.090. If the Commission finds probable cause to believe a violation occurred, the Commission may initiate further proceedings. KRS 11A.080(4). If the Commission finds clear and convincing proof of a violation, it may reprimand, suspend, remove from office, and/or fine a

-12-

violator up to $5,000 for each violation.  KRS 11A.990(3).  Also here, the Commission's hearing officer considered motions (motions to dismiss and for summary judgment) and could have set the matter for an evidentiary hearing. Clearly, the Commission is a quasi-judicial tribunal with quasi-judicial power, and the statute of limitations applies to its proceedings.

Lastly, the Commission put forth a public policy argument as to why it should not be bound by any time limitations under these circumstances.  It argues it has a duty to protect the public from those in powerful governmental positions that do not merit the public's trust.  While we appreciate that duty and those protections, the legislature has the "prerogative of declaring public policy, and [] the mere wisdom of its choice in that respect is not subject to the judgment of the court." *Fann v. McGuffey*, 534 S.W.2d 770, 779 (Ky. 1975).  Here, we need not – and should not – establish or rule upon public policy from the bench in light of the clear statutory language before us.  *See Cameron v. Beshear*, 628 S.W.3d 61, 173 (Ky. 2021) (citations omitted) (stating the role of the judiciary is to enforce the General Assembly's policies and noting the enactment of a statute constitutes an implied finding that the public interest required it).

Therefore, the circuit court did not err in determining the Commission's prosecution of KRS 11A.020 ethical violations are subject to the time limitations within KRS 413.120.

**B. The circuit court did not err in its timeline, and the Commission's claims are barred by KRS 413.120(2).**

Again, an action "shall be commenced within five (5) years after the cause of action accrued. . . ." KRS 413.120. The timeline created by KRS 413.120 begins to run when the cause of action *accrues* and stops when an action is *commenced*. The circuit court determined the cause of action *accrued* no later than November 8, 2016 (when the last alleged violations at issue took place) and the action *commenced* November 18, 2021 (when the Commission filed its complaint).

On appeal, the Commission argues the circuit court improperly determined the applicable timeline for the five-year statute of limitations. The Commission contends the cause of action *accrued* on May 18, 2017, when A.D. Selph made a formal complaint to the Commission, and *commenced* on July 17, 2017, when the first notice of the institution of proceedings was sent to Secretary Grimes.

While the Commission may contest on appeal when the action *accrued*, it may *not* now challenge the date the action *commenced.* The commission **agreed** before the circuit court that the action commenced on November 18, 2021, and it may not challenge that commencement date for the first time on appeal. Appellate courts are "without authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (citations omitted). A party is not "permitted to feed one can

-14-

of worms to the trial judge and another to the appellate court." *Neal v. Commonwealth*, 95 S.W.3d 843, 848 (Ky. 2003) (citation omitted). Hence, only the date the action *accrued* is on review.

Secretary Grimes argues the cause of action accrued on the date of the alleged improper acts, sometime before the election of November 8, 2016. The Commission argues that cause of action date was tolled until the Commission "discovered" the alleged improper acts – *i.e.*, received notice (formal complaints by A.D. Selph) of Secretary Grimes' alleged improper actions – on May 18, 2017. In essence, the Commission argues the discovery rule postpones the initiation of the statute of limitations.

"Generally, a cause of action . . . accrue[s] when the injury occurs." *Roman Catholic Diocese of Covington v. Secter*, 966 S.W.2d 286, 288 (Ky. App. 1998) (citing *Caudill v. Arnett*, 481 S.W.2d 668, 669 (Ky. 1972)). "However, in certain cases, a cause of action does not necessarily accrue when the injury occurs, but rather when the plaintiff first discovers the injury or should have reasonably discovered it." *Id.*; *see also Bridgefield Cas. Ins. Co., Inc v. Yamaha Motor Mfg. Corp. of America*, 385 S.W.3d 430, 433 (Ky. App. 2012) (citing *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010)). Yet, with few exceptions, "Kentucky courts have generally refused to extend the discovery rule without statutory authority to do so." *Secter*, 966 S.W.2d at 288 (citations omitted). Despite our *de*

*novo* review, we believe the circuit court succinctly and sufficiently addressed this

argument.

> [Th]e *KIGA* Court provided constructive guidance that "a cause of action accrues when the [Natural Resources & Environmental Protection Cabinet] first has the right to institute an action of any kind, administrative or judicial." *See KIGA*, *supra* at 282.
>
> Further, the appellate courts in Kentucky have rejected the use of the "discovery rule" to toll a statute of limitations, "with the exception of cases involving latent injuries from exposure to harmful substances." *See* [*Secter*, 966 S.W.2d at 288], or cases in which there is an on-going violation of civil rights. *See Ammerman v.* [*Bd. of Educ. of Nicholas Cnty.*], 30 S.W.3d 793 (Ky. 2000). Neither situation applies here. The Court of Appeals has recently declined to extend this discovery rule to cases involving the 5-year statute of limitations for breaches of fiduciary duty. *Middleton v. Sampey*, 522 S.W.3d 875 (Ky. App. 2017). There is no basis to extend this rule to this case when the Ethics Commission had years to investigate Secretary Grimes before its filing of a formal complaint over half a decade after the events in question. As the Court of Appeals held in *Middleton*, "we decline to apply the discovery rule without statutory authority to do so." (internal citation [and quotation marks] omitted). *See* [*id.*] at 879.

Thus, in the absence of statutory language extending the discovery

rule to KRS 11A.020 violations, we find no error in the trial court's determination

that the cause of action *accrued* on or before November 8, 2016, and *commenced*

on November 18, 2021. Consequently, the Commission's action against Secretary

Grimes falls outside the five-year window in which to bring these claims.

# CONCLUSION

Accordingly, we AFFIRM the Franklin Circuit Court because the Commission's claims are time barred by the five-year limitations period set forth in KRS 413.120(2).

ALL CONCUR.

BRIEFS FOR APPELLANT:

Meena Moharty
Frankfort, Kentucky

*AMICUS CURIAE* BRIEF FOR
STATE BOARD OF ELECTIONS:

Carmine G. Iaccarino
Lexington, Kentucky

Taylor Brown
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Jonathan T. Salomon
Louisville, Kentucky

Kent Wicker
Louisville, Kentucky

J. Guthrie True
Frankfort, Kentucky